HAMLIN, Justice:
 

 Defendant (formerly Public Administrator in and for the Parish of Orleans) appeals from his conviction for the crime of
 
 *484
 
 theft (LSA-R.S. 14:67
 
 [1]
 
 ) and sentence to serve three years at hard labor in the Louisiana State Penitentiary.
 

 The Public Administrator in and for the Parish of Orleans is appointed by the •Governor for a term of four years. LSA-R.S. 9 :1581, Act 497 of 1960. He administers vacant successions, all money or other property in the Parish of Orleans which has been abandoned or the ownership of which is unknown and all the money or other property standing in the name of persons who are absent and not represented and have not been heard from for eight years •or more. LSA-R.S. 9:1583, 1584, 1585. He administers any money or other property •deposited with any person, bank, trust company, or other depository in the City of New Orleans, other than in a checking or savings department, and stands in the names •of persons who are absent and not represented and have not been heard from for ten years or more. LSA-R.S. 9:1587.
 

 Defendant, William P. Hagerty, became Public Administrator in and for the Parish of Orleans during June, 1956, and terminated his position in July, 1964. At the time of his appointment, Act 14 of 1926 provided that the Governor should appoint, with the advice and consent of the Senate, a suitable person to be known as Public Administrator for the Parish of Orleans, whose term of office would be for four years. Act 200 of 1952 recited, in part:
 

 “Sec. 1. * * *
 

 “ * * * He shall be appointed administrator .of'all money or other property in the Parish of Orleans- which has been abandoned or the ownership of which is unknown and of all money or other property standing in the name of persons who are absent and -not represénted and have not been heard from for eight years or more.
 

 “It shall be the duty of any person, firm or corporation holding such funds or property to deliver same to the Public Administrator and his receipt for same shall relieve said person, firm or corporation from ' all liabilities therefore. The said Public Administrator shall then proceed to administer such property in the manner provided by law for the administration of vacant successions.
 

 
 *486
 
 “Sec. 2. * * *
 

 “ * * * He shall receive as a compensation five percent on all funds administered by him, and all necessary expenses incurred in administering and preserving property subject to his administration.”
 

 With funds withdrawn from the Public Administrator’s account in the National Bank of Commerce, New Orleans, Louisiana, defendant purchased from said National Bank of Commerce, on September 18, 1957, a six months Certificate of Deposit for $50,000.00 in the name of the Public Administrator in and for the Parish of Orleans. After this certificate matured, the $50,000.00 was continuously reinvested in a new Certificate of Deposit until September 23, 1960, when only $40,000.00 of the $50,000.00 was reinvested; $10,000.00 was allegedly restored to the Public Administrator’s account maintained in the National American Bank. The foregoing $40,000.00 was reinvested in Certificates of Deposit, the last being purchased on March 26, 1962. These Certificates of Deposit bore interest in the total amount of $5,283.13 during this five year period. The State alleges that defendant committed theft of this interest.
 

 By Bill of Information filed April 22, 1966 and amended May 10, 1966, the State charged that William P. Hagerty “committed a theft of Five Thousand, Two Hundred and Eighty-Three Dollars and Thirteen Cents ($5,283.13) in the lawful money of the United States of America, belonging to the State of Louisiana, * * * ”
 

 The State negatived prescription by stating in the Bill of Information that four years had not elapsed since Hagerty terminated his office, employment of fiduciary relationship to the State of Louisiana as: Public Administrator for the Parish of Orleans.
 

 Defendant was arraigned on May 3, 1966,. and pleaded “Not Guilty.” He was granted to May 18, 1966 to file pleadings. He was. rearraigned on June 1, 1966, when the State filed its answer to defendant’s application: for a Bill of Particulars. Trial commenced on June 27,1966, during the course of which ten Bills of Exceptions were reserved and are presented for our consideration.
 

 BILLS OF EXCEPTIONS NOS. 1 AND 10.
 

 Bill of Exceptions No. 1 was reserved at the opening of trial, prior to the commencement of the selection of a jury, when the trial judge denied defendant’s request to withdraw his plea of “Not Guilty” for the purpose of filing a Demurrer and Motion to Quash, asking for an immediate judgment thereon and not seeking a delay.
 

 Bill of Exceptions No. 10 was reserved after trial and verdict, but before sentence, when the trial court overruled defendant’s Motion in Arrest of Judgment.
 

 The Demurrer and Motion to Quash averred that: (1) the matters as alleged in the
 
 *488
 
 Bill of Information and detailed in the Bill of Particulars were not sufficient in law to ■compel the defendant to answer thereto; (2) if all the matters as alleged were proven, no violation of the law would be proven; (3) neither the State of Louisiana nor anyone other than the defendant ever had ownership of the interest money; (4) the actions which the State alleges were performed by the defendant would, at most, constitute an unauthorized use of money which was allegedly deposited, but there could be no finding of guilt in connection therewith for the reason that the defendant was charged with the theft of the interest money and not money which was allegedly ■deposited by defendant; and (5) the situation presented was no different from one in which a person might unauthorizedly lease an automobile which had been placed in his custody and then be charged with the theft of the money which he received as rental therefor.
 

 The Motion in Arrest of Judgment contained substantially the same averments as those of the Demurrer and Motion to Quash, and additionally that: (1) although the owner of property is entitled to the fruits thereof, the failure to deliver such fruits to the owner under circumstances as those set forth in the Bill of Information and Bill of Particulars does not constitute a theft; (2) the interest money was not at the time of the alleged misappropriation or taking property which “belonged to another” within the contemplation if LSA-R.S. 14:67; and (3) the Louisiana Legislature by Acts
 
 7
 
 of 1963 and 37 of 1964 directed the Treasurer of the State of Louisiana to do precisely the same thing which the defendant is charged with having done.
 

 LSA-R.S. 15:284 (See, Art. 535, new Code of Criminal Procedure), which was in effect at the time of the instant trial, provided :
 

 “Every objection to any indictment shall be taken by demurrer or by motion to quash such indictment, before the arraignment ; and every court before which any such objection shall be taken for any formal defect, may, if it be thought necessary, cause the indictment to be forthwith amended in such particular, and thereupon the trial shall proceed as if no defect had appeared.”
 

 LSA-R.S. 15:265 (See, Arts. 535 and 561, new Code of Criminal Procedure) provided :
 

 “The defendant may at any time, with the consent of the court, withdraw his plea of not guilty and then set up some other plea or demur or move to quash the indictment.”
 

 The Demurrer and Motion to Quash set forth no reason why it was filed twenty-six days after arraignment and on the day of trial; under the authority of the above statutes, its allegations were not considered by the trial court. However, as stated su
 
 *490
 
 •pra, the Motion in Arrest of Judgment contained substantially the same averments, .and it was considered by the trial court and found to be without merit. Under such circumstances, we do not find that the trial judge abused his discretion in not permitting the defendant to withdraw his plea of '“Not Guilty” and file other pleadings. State v. Ward, 246 La. 766, 167 So.2d 359. We also find that defendant suffered no prejudice. All contentions advanced were .substantially repeated in other Bills of Exceptions and received thorough consideration (and found to be without merit) during the course of trial.
 

 The principal contention averred by defendant in the Motion in Arrest of Judgment and in the great number of other Bills of Exceptions is that in the Bill of Information the State charged that the defendant committed a theft of money belonging to the State of Louisiana, and that the State did not prove that the interest money belonged to the State of Louisiana or that the defendant had committed a theft of such money. In brief, it is averred, “We submit that it is crystal clear that, if proven guilty of anything Hagerty could not have been proven guilty of anything but unlawful use of movables, a lesser offense, and the jury was never even given any clear idea of this possible milder verdict.”
 

 Defendant testified that he purchased the Certificates of Deposit and that he did not get a court order or court authority for such purchases. He gave the following pertinent testimony:
 

 “Q. In whose name did you purchase these certificates?
 

 “A. The Public Administrator in and for the Parish of Orleans.
 

 “Q. Tell me whether your name, personally, appears on any one of those certificates ?
 

 “A. The only way it appears is when I endorse it on the back, but not on the front as ownership, or anything like that.”
 

 With respect to the interest money, defendant testified:
 

 “Q. Now, Mr. Hagerty, is it a fact that you received as interest on the certificates of deposit the sum of $5,-283.13?
 

 “A. Yes, sir.
 

 “Q. Was that money ever deposited in the public administrator’s account?
 

 “A. No, that was deposited in my special account from which, as I explained, I operated the expenses of the office. [The State attempted to prove that expenses were not paid from the interest money.]
 

 “Q. The interest money was public money, was it not?
 

 “A. Yes.
 

 
 *492
 
 “Q. The dividend money was public money, was it not?
 

 “A. When you say, the interest money?
 

 “Q. The interest money on the certificates of deposits; you didn’t use your personal money to buy these certificates, did you ?
 

 “A. No.
 

 “Q. You used public money, didn’t you?
 

 “A. I used money in the public administrator’s funds.
 

 “Q. And isn’t that systematically turned over to the State, after a certain amount of time ?
 

 “A. Yes.
 

 “Q. How did you do that?
 

 “A. I turned that over after so many years and until such time, and even to this day, it is not State property.
 

 “Q. It isn’t State property?
 

 “A. No, because any relative of any one of those people can come in at any time and claim it.
 

 “Q. But, it is not your property?
 

 “A. No sir.
 

 “Q. Positively, not your property?
 

 “A. No sir.
 

 “Q. So, the interest wasn’t your property either, was it?
 

 “A. No.”
 

 In Act 14 of 1926 and in the amendments that followed, the Public Administrator is charged with the duty of administering the funds which come into his possession in accordance with the law of administration of vacant successions. Article 1147 of the Louisiana Civil Code provided that “Every curator of a vacant succession or of absent heirs is bound to take care of the effects intrusted to him as a prudent administrator, and to render an exact and faithful account of the fruits and revenue they produce. He is responsible for all damages caused by his misconduct.” This article was replaced by Articles 3191 and 3333 of the LSA— Code of Civil Procedure.
 

 The Public Administrator for the Parish of Orleans conducts his appointive office in a fiduciary capacity, being a fiduciary for the State (which also becomes a fiduciary at certain times) and unknown heirs.
 

 “The word ‘fiduciary,’ as a noun, means one who holds a thing in trust for another, a trustee; a person holding the character of a trustee, or a character analogous to that of a trustee, with respect to the trust and confidence involved in it and the scrupulous good faith and candor which it requires; a person having the duty, created by his undertaking, to act primarily for another’s benefit in matters connected with such undertaking. Also more specifically, in a statute, a guardian, trustee, executor, administrator, receiver, conservator, or any person acting in any fiduciary capacity for any
 
 *494
 
 person, trust, or estate. * * * ” 36A C.J.S. Fiduciary, p. 381.
 

 “One is said to act in a ‘fiduciary capacity’ or to receive money or contract a debt in a ‘fiduciary capacity,’ when the business which he transacts, or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust -on the one part and a high degree of good faith on the other part. The term is not restricted to technical or express trusts, but includes also such offices or relations as those of an attorney at law, a guardian, executor, or broker, a director of a corporation, and a public officer. * * * ” Black’s Law Dictionary, Fourth Edition (1951), Fiduciary Capacity. Cf. Oldland v. Gray, 10 Cir., 179 F.2d 408; Emery & Kaufman, Ltd. v. Heyl, 227 La. 616, 80 So.2d 95; Wofford v. Wofford, 244 Miss. 442, 142 So.2d 188.
 

 At the time the Certificates of Deposit -earned the interest, the owners of the funds had neither appeared nor become known, nor had the funds been turned over to the State.
 

 LSA-R.S. 9:1586 provided:
 

 “He [the Public Administrator] shall be appointed curator of all vacant successions in the parish of Orleans, and shall administer them until the heirs present themselves and are recognized by the court and placed in possession. If no heir presents himself within one year from the date of homologating his final account, the public administrator shall pay the funds realized from the succession into the state treasury.” (Act 497 of 1960 expanded LSA-R.S. 9:1586, but it still provided that, “If no heir presents himself within one year from the date of the homologation of a final account, the public administrator shall pay the funds realized from the succession into the state treasury.”) See, also, LSA-R.S. 9:151.
 

 Article 929 of the Louisiana Civil Code provides:
 

 “In defect of lawful relations, or of a surviving husband or wife, or acknowledged natural children, the succession belongs to the State.”
 

 Article 485 of the Louisiana Civil Code provides:
 

 “The succession [successions] of persons who die without heirs, or which are not claimed by those having a right to them, belong to the State.” See, Cordill v. Quaker Realty Co., 130 La. 933, 58 So. 819; Succession of Tyson, 186 La. 516, 172 So. 772.
 

 The State’s title to the funds in defendant’s possession at the time the instant interest accrued was inchoate; that is, partial, temporary, unfinished, provisional, begun but not completed. Tennessee Gas
 
 *496
 
 Transmission Co. v. Violet Trapping Co., 248 La. 49, 176 So.2d 425; Wells v. Joseph, La.App., 95 So.2d 843; Vol. 20A Words and Phrases, Inchoate, p. 94. The State’s title could have been taken away by the appearance of the previously unknown owners or heirs, but until they made their appearance the State had inchoate rights. As admitted by the defendant, supra, he did not own the funds. Under the circumstance herein, the State’s inchoate' title gave it an indicia of ownership.
 

 The ownership of a thing, whether it be movable or immovable, carries with it the right to all that the thing produces, and to all that becomes united to it, either naturally or artificially. Art. 498, La.Civil Code. By right of accession, civil fruits, that is the revenue yielded by property from the operation of the law or by agreement, belong to the owner. Art. 499, La.Civil Code. Civil fruits are rents of real property, the interest of money, and annuities. Art. 545, La.Civil Code.
 

 We conclude that the instant interest, which was the fruit of the Certificates of Deposit, was the lawful property of the State of Louisiana under an inchoate title.
 

 The Office of Public Administrator is the creation of the Legislature of the State of Louisiana, and, as stated supra, defendant as an appointed Public Administrator was a fiduciary.
 
 [2]
 
 He was, therefore, a fiduciary of the instant interest.
 

 The Bill of Information properly charged that the $5,283.13 belonged to the State of Louisiana. The trial judge correctly overruled the Motion in Arrest of Judgment.
 

 Bills of Exceptions Nos. 1 and 10 are without merit.
 

 BILL OF EXCEPTIONS NO. 2.
 

 Bill of Exceptions No. 2 was reserved when the trial court overruled defense counsel’s objection to the trial judge’s ruling permitting James B. Lancaster, Legislative Auditor for the State of Louisiana, formerly Supervisor of Public Funds, to testify with respect to the contents of a letter he had written the defendant on May 7, 1963.
 

 Mr. Lancaster refreshed his memory from State Exhibit S-20, which was not admitted in evidence. Counsel contended that the letter, State Exhibit S-20, contained conclusions drawn from a purport
 
 *498
 
 ■ed audit which was not made by the witness Lancaster, and that the findings expressed by said witness were those of another individual.
 

 We find that the trial judge was ■correct in overruling counsel’s objection “to Mr. Lancaster’s testimony. We agree with his Per Curiam which follows in part:
 

 “The witness testified that he had written the letter to the defendant dated May 7, 1963 in his official capacity as Supervisor of Public Funds. The Court •did not permit him to read the letter but permitted him to testify as to what he had written after having refreshed his memory from the document as his refreshed recollection was the best evidence. If a witness can testify as to what he told a defendant, then certainly he can testify as to what he had written to him. There was no claim or assertion by the defendant that he had not received such a letter. The testimony was relevant and material and was admissible. The truth or accuracy of the statement was not at issue but only that such a statement or, properly, an inquiry had been directed to the defendant regarding the matter at issue.
 

 “Subsequently, during the trial all of this information was corroborated and developed not only by the State and the defense but also by the defendant’s own testimony.”
 

 Bill of Exceptions No. 2 is without merit.
 

 BILL OF EXCEPTIONS NO. 3.
 

 Bill of Exceptions No. 3 was reserved when the trial court overruled defense counsel’s objection to the introduction in evidence of State Exhibits S-22, S-23 and S-24.
 
 [3]
 

 
 *500
 
 I-t is contended that the exhibits contained admissions against interest written by the defendant; it is also contended that they .were not mentioned in the opening statement of the State. It is argued that the admission of the exhibits were in violation of the rulings of the United States Supreme Court in the cases of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246; and McLeod v. Ohio, 381 U.S. 356, 85 S.Ct. 1556, 14 L.Ed.2d 682.
 

 The trial judge was correct in overruling defense counsel’s objection to the introduction of the exhibits. They were not written under custodial interrogation, and they were not directed to a police officer. The cases cited are not apposite or applicable.
 

 The following Per Curiam of the trial judge supports the correctness of his ruling:
 

 “This bill was reserved when the Court permitted State Exhibits S-22, S-23 and S-24 to be offered in evidence, which were letter written by the defendant to James B. Lancaster relative to certain items of an audit concerning the defendant’s activity as Public Administrator for the Parish of Orleans.
 

 (C
 
 * * *
 

 “This correspondence was specifically mentioned in the State’s opening statement, to-wit:
 

 “ ‘All correspondence between the defendant, William P. Hagerty and Mr. J. Lancaster, Supervisor of Public Funds of the State of Louisiana.’
 

 “Further, these letters were written in the ordinary course of business, before the. defendant was a suspect or even considered as a possible defendant. These inquiries and responses are everyday occurrences. -These letters are, not confessions or admissions requiring a predi
 
 *502
 
 cate for their admission under any stretch of the imagination.”
 

 Bill of Exceptions No. 3 is without merit.
 

 BILL OF EXCEPTIONS NO. 4.
 

 Bill of Exceptions No. 4 was reserved when the trial court refused to permit •counsel for the defendant to introduce in •evidence the record in Proceeding No. 194-047 of the Docket of the Criminal District Court for the Parish of Orleans, a •malfeasance in office charge against William P. Hagerty, defendant herein.
 

 Counsel for the defendant contended that they were entitled to show that defendant bad been charged in the Criminal District Court for the Parish of Orleans with two cases covering the same sort of facts.
 

 The record was not relevant to the instant case. We find that the trial judge did not abuse his discretion by not admitting the record in evidence, and that defendant’s rights were not prejudiced by its absence.
 

 Bill of Exceptions No. 4 is without merit.
 

 BILL OF EXCEPTIONS NO. 5.
 

 •Bill of Exceptions No. 5 was reserved when the trial judge sustained the State’s objection to defense counsel’s reading of Act 7 of 1963 and Act 37 of 1964 to the jury during closing argument.
 

 Act 7 of 1963 provides, in part':
 

 “Section 1. The State Treasurer is hereby directed to invest moneys on deposit in the State Treasury belonging to the General Fund of the state and funds in the State Treasury to the credit of state agencies, departments, boards and commissions and any other funds under the control of the State Treasurer, which he, in his discretion, may determine to be available for investment in Time Certificates of Deposit of state banks organized under the laws of Louisiana and national banks having their principal office in the state of Louisiana; * * *.
 

 “Section 2. Time Certificates of Deposit purchased by the State Treasurer under authority of this Act shall mature not more than six months after the date of their purchase. They shall bear at a rate of two percent.
 

 “Section 3. The interest earned by the State Treasurer on investments herein authorized shall be credited to the General Fund of the state.”
 

 Act 37 of 1964 authorized the State Treasurer and the heads of all departments, ■ hoards, commissions, and other state agencies, to invest certain monies under their control in Certificates of Deposit or.other specified obligations. It provided:
 

 “Interest earned on Certificates of Deposit purchased by the State Treasurer shall be credited to the General Fund of the state. Interest earned on Certificates of Deposit or direct U. S. Treasury obligations purchased under the authority of Paragraph B of this section of
 
 *504
 
 this Act shall he credited to the fund out of which the investment was made.”
 

 Counsel for the defendant argued that they wanted to show that under the Acts of 1963 and 1964 heirs appearing and claiming ownership of money in successions thought to be vacant do not receive any interest on the money of the successions. They contended that there was a hiatus in the law prior to the enactments, and that they wanted to inform the jury of the effect of the hiatus as it bore on the intent or guilty knowledge of the defendant.
 

 Herein, counsel argue that the fact that the Legislature found it necessary to pass Act
 
 7
 
 of 1963 and Act 37 of 1964 (which Acts entitle the State to interest such as is herein involved) is persuasive of the conclusion that before passage of Act 7 of 1963, the interest earned on Certificates of Deposit did not belong to the State.
 

 Supra, in Bills of Exceptions Nos. 1 and 10, we found that defendant did not own the interest and that the State had an inchoate title to it. This finding was made absent the consideration of Act 7 of 1963 and Act 37 of 1964. These Acts enlarged and condensed into two laws much of which had been previously contained in many laws. We do not find nor does the jurisprudence show that a hiatus had previously existed. There was never any indication that civil fruits belonged to a fiduciary personally. Under such circumstances, the Acts of 1963 and 1964 were not relevant evidence and the trial judge did not abuse his discretion in not permitting their reading. The defendant suffered no prejudice from his ruling. In his. Per Curiam, the trial judge correctly states':
 

 “First, these Acts were passed subsequent to the dates alleged in the bill of information and could have no bearing on the issue. Secondly, no evidence had been introduced or elicited regarding these acts during the trial (R.S. IS :381 Code of Criminal Procedure). Thirdly, these Acts referred to the investment of idle funds by various State agencies,, setting out the procedures, etc. The defendant was not charged with the improper investment of idle funds but rather with the conversion or theft of the fruits or interest of public funds that he had invested.”
 

 Bill of Exceptions No. 5 is without merit.
 

 BILL OF EXCEPTIONS NO. 6.
 

 Bill of Exceptions No. 6 was reserved to the action of the trial judge in refusing to give Special Charge No. 1.
 

 Requested Special Charge No. 1 recited:
 

 “The defendant in this case is charged with the crime of theft. Theft is defined in our law as the misappropriation, or taking of anything of value which belongs to another, either without the con
 
 *506
 
 sent of the other to the misappropriation or taking, or by means of fraudulent conduct, practice, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
 

 “The subject of the theft in this case is alleged to be the sum of $5,283.13 of money belonging to the State of Louisiana. This being the case, in order to support a conviction of the crime of theft, the State must prove that the amount alleged, or any part thereof, was the property of the State of Louisiana as alleged; that it was misappropriated or taken by the defendant either without the consent of the State of Louisiana or by means of fraudulent conduct, practices, or representations.
 

 “While the law requires that the subject of the theft merely be the property of someone other than the defendant, where the State by means of the Bill of Information, as in this case, alleges ownership in a particular individual or body politic such as the State of Louisiana, the State is bound by that allegation and must prove ownership as alleged in order to support a conviction.”
 

 LSA-R.S. 15:390 (now Art. 807, new Code of Criminal Procedure) directed that except as otherwise provided, the judge must give every requested charge that was wholly correct and wholly pertinent, unless the matter contained in the requested charge had been already given, or unless; the charge required qualification, limitation,, or explanation.
 

 Herein, the trial judge’s general charge contained a detailed description of the crime of theft, its ingredients, and the law’s requirements with respect to proof. He did say:
 

 “Proof of ownership in the particular person, corporation or political entity alleged in the bill of information is not important in theft. It suffices to show that the money or things of value allegedly taken were owned by someone other than the taker or misappropriator.”
 

 We found, supra, that the interest money alleged to have been stolen did belong to the State under an inchoate title y the record discloses that the State offered evidence of such fact. Under such circumstances, the requested charge was redundant, and the defendant suffered no prejudice from the trial judge’s refusal to give it.
 

 Bill of Exceptions No. 6 is without merit.
 

 BILL OF EXCEPTIONS NO. 7.
 

 Bill of Exceptions No. 7 was reserved when the trial judge refused to give Special Charge No. 2 requested by counsel for the defendant.
 

 Requested Special Charge No. 2 recited:
 

 “One of the indispensable elements of the crime of theft as defined by our
 
 *508
 
 statute is that the property which is alleged to be the subject of the theft belong to a person other than the defendant. Consequently, in the case at bar, unless the State proves to your entire satisfaction, and beyond a reasonable doubt, that the sum of $5,294.09 [5,283.13] which it alleges was the subject of the theft, or ■any part thereof, belonged to a person other than this defendant, it would be your duty to return a verdict acquitting this defendant of the crime of theft.
 

 “There is no law in the State of Louisiana requiring that the State Treasurer or the Public Administrator for the .Parish of Orleans deposit, at interest, funds which come into the possession of the Public Administrator for the Parish of •Orleans in his capacity as such. This being the case, neither the State of Louisiana nor other owners of such funds have a legal right to have such funds deposited at interest. Thus, should it be proven that the Public ■ Administrator for the Parish of Orleans deposited funds which were in his custody and possession and obtained interest on said ■deposit and then converted said. interest ■to his own use, while, this action may be an unauthorized use of the moneys deposited at interest, the conversion of the interest to his own use would not constitute the crime of theft for the reason that said interest was never owned or possessed by the State of Louisiana as alleged in the Bill of Information.
 

 “This situation could be analogized to one in which a person takes an automobile belonging to another, intending to return it, and eventually returning it, but while he has that automobile of another in his possession unauthorizedly leases same at a rental of $10 per day. While he may be guilty of unauthorizedly using this automobile of another, he would not be guilty of theft of the profit which he derived from the rental thereof.”
 

 LSA-R.S. 15:390 provided that the trial judge must give every requested charge that is wholly correct and wholly pertinent. As we have found that the interest money herein was owned by the State under an inchoate title, the above requested charge was not wholly correct.
 

 The trial judge acted correctly in refusing to give Special Charge No. 2; the defendant suffered no prejudice by his ruling.
 

 Bill of Exceptions No. 7 is without' merit.
 

 BILL OF EXCEPTIONS NO. 8.
 

 Bill of Exceptions No. 8 was reserved when the trial judge refused to give Special Charge No. 3 requested by counsel for the defendant.
 

 Requested Special Charge No. 3 recited:
 

 “In this case the State has informed the defendant by means of a Bill of
 
 *510
 
 Particulars that the basis of the charge against him is that he purchased a $50,000 Certificate of Deposit from the National Bank of Commerce, in New Orleans, on September 18, 1957, with funds which he had received on behalf of the State of Louisiana in his capacity as Public Administrator; that this money was reinvested until about September 23, 1960, when the defendant reinvested $40,000 of said original $50,000 in a new Certificate of Deposit, which was reinvested until September 26, 1962, when it was restored to a bank account maintained by the Public Administrator; that from these investments he received interest in the amount of $5,283.13 which he never deposited to any accounts maintained for the Public Administrator. It is this sum of $5,283.13 which the State alleges is the subject of the theft.
 

 “Under such a situation, should you find that his defendant unauthorizedly used either or both of said sums which are alleged to have been invested; that is, the sum of $50,000 and/or the sum of $40,000, in these proceedings you would not have the right to find him guilty of unauthorizedly using said süms for the reason that, while the crime of unauthorized Use of a Movable is responsive to a charge of theft, such a verdict must pertain to the funds which the defendant is charged with having-stolen and not to funds which are separate and distinct therefrom.”
 

 We do not find that the requested Special Charge No. 3 was wholly correct. LSA-R.S. 15:390. Further, the-trial judge’s general charge to the jury-covered matters stated in the requested charge. The jurisprudence is legion that the trial judge may refuse a special charge-when the subject matter is covered by the general charge. State v. Fuller, 218 La. 872, 51 So.2d 305; State v. Ragsdale, 249 La. 420, 187 So.2d 427. The trial judge-committed no error in refusing to give-Special Charge No. 3, and defendant suffered no prejudice by his ruling.
 

 Bill of Exceptions No. 8 is without merit..
 

 BILL OF EXCEPTIONS NO. 9..
 

 Bill of Exceptions No. 9 was reserved! when the trial judge overruled defendant’s-Motion for a New Trial.
 

 The objections raised in other Bills of' Exceptions were all reiterated in the Motion for a New Trial. It presents nothing for our review.
 

 Bill of Exceptions No. 9 is without merit.
 

 For the reasons assigned, the conviction and sentence are affirmed..
 

 [1]
 

 . “Theft is the'misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices or representations. An intent to deprive .the other permanently of whatever may be the subject of the misappropriation or taking is essential.
 

 “ * * *
 

 “When there has been misappropriation or taking by a number of distinct acts of the offender, the aggregate of the amount of the misappropriations or takings shall' determine the grade of the offense.” LSA-R.S. 14:67.
 

 [2]
 

 . Act 68 of 1910, one of the sources of LSA-R.S. 9:1581, supra, provides that the appointed Public Administrators shall be authorized to appear in court for and on behalf of the State of Louisiana
 
 to assert her claim as heir, to any estate itn which the State may he interested.
 
 LSA-R.S. 9:1588 provides that Public Administrators may appear in court in belialf of the State
 
 to assert its claim to any succession in which the State may he interested.
 
 One of its sources is Act 68 of 1910.
 

 These are examples of the Public Administrator’s fiduciary capacity.
 

 [3]
 

 .
 

 “July 9th. 1963.
 

 “Dear Mr. Lancaster:
 

 I just returned to N. O. this morning, & have to go out again Thursday; however if convenient to you I should like to meet you here any day next week except Monday.
 

 Please advise me of your pleasure & I shall receive your letter upon my return home.
 

 Yours very truly [Sgd] Wm. P. Hagerty.” State Exhibit S-22
 

 “May 14, 1963,
 

 '“Mr. J. B. Lancaster,
 

 Supervisor of Public Funds,
 

 Baton Rouge 4, La.
 

 Dear Mr. Lancaster:
 

 In reply to your letter of May 7, 1963 •containing several items, I am able to inform you at this time as follows:
 

 1. I have been in contact with the parties owing the balance and made formal demand on April 24, 1963, but have not received anything from them as yet, nor have I been able to pay it.
 

 2. Difference in Liquidation Accounts. I have made arrangements to take care of this in its entirety by the end of May, I am reasonably sure. Mr. Suer quoted me correctly.
 

 3. I have done nothing as yet on this.
 

 4. I have been unable to attend to this up to now.
 

 5. This item I shall take care of by next Monday, May 20th, 1963.
 

 6. This item has been carried out some months ago, and the certificates- are in our bank box at the National Bank of Commerce in New Orleans. However, we sent a check for $112,000.00 to the State Treasurer in April 1963.
 

 
 *500
 
 I shall keep you informed as I handle these matters.
 

 With kind regards and best wishes, I am,
 

 Yours very truly,
 

 [Sgd] Wm. P. Hagerty.” State Exhibit S-23 “July 2/63
 

 “Dear Mr. Lancaster:
 

 Please excuse this note in reply to yours of July 1st. I have not contacted in all this time because of.-these facts; —I have again contacted the parties in the Psayla Succ. & they have promised an answer which has not been forthcoming. So I did so again on June 25. This on Item #1. I enclose a duplicate deposit slip on Item #5; — the -dividends which I was able to do today.
 

 In regard to the liquidation accounts— Item 2 — there has been considerable' delay in my obtaining the funds due to sale of some assets which only last Friday I was tóld I should bo able to receive in a week or ton days.
 

 I shall be out of N.O. from this evening until Monday afternoon & will contact you Tues. next; July
 
 9th.
 
 at which timtí I may have a deposit slip for you in the liquidation matters.
 

 Sincerely
 

 [Sgd] Wm. P. Hagerty.”
 

 State Exhibit S-24