# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 25-595

**WEST RIVER LANDING, L.L.C.**

**VERSUS**

**DEWEY F. WEAVER, JR.**

### CONSOLIDATED WITH

### 25-596

**WEST RIVER LANDING, L.L.C.**

**VERSUS**

**DEWEY F. WEAVER, JR.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2024-1416 c/w NO. 2024-4921
HONORABLE KENDRICK J. GUIDRY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**VAN H. KYZAR**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Van H. Kyzar, Jonathan W. Perry, and Ledricka J. Theirry, Judges.

**AFFIRMED.**

**J. Michael Veron**
**Shayna L. Sonnier**
**Gage M. Stewart**
**Veron Bice, LLC**
**721 Kirby Street**
**Lake Charles, LA 70601**
**(337) 310-1600**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **West River Landing, L.L.C.**

**Bryan D. Scofield**
**James T. Rivera**
**Jessica W. Marchand**
**Scofield & Rivera, L.L.C.**
**P.O. Box 4422**
**Lafayette, LA 70501**
**(337) 235-5353**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Dewey F. Weaver, Jr.**

**David C. McMillin**
**Watson, McMillin & Street, L.L.P.**
**1881 Hudson Circle**
**Monroe, LA 71201**
**(318) 322-9700**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Dewey F. Weaver, Jr.**

**KYZAR, Judge.**

In these consolidated suits, Plaintiff, West River Landing, L.L.C., appeals from a trial court judgment granting peremptory exceptions of prescription and/or peremption pursuant to La.R.S. 12:1502 in favor of Defendant, Dewey F. Weaver, Jr., and dismissing its claims against him with prejudice. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

These appeals stem from the construction of two hotels by two registered Louisiana limited liability companies, which were formed for identical purposes by the same members, were operated under identical operating agreements, and were managed by the same member. Both hotels, which were constructed by the same contractor, were later found to have identical deficiencies in their construction. This led to suits against the contractor and its subcontractors for breach of the construction contracts, and ultimately, the suits which form the bases for these appeals.

Prien Lake Hospitality, L.L.C. ("Prien Lake") and Lake Charles Hotel Resorts Group, L.L.C. ("LCHR") (referred to collectively as "the Companies") are limited liability companies that operate pursuant to operating agreements ("the Agreement(s)") for the stated purpose of owning, constructing, and operating "a hotel/motel business[.]" As the Agreements are nearly identical, our reference to a specific provision applies to both Agreements unless otherwise noted.

The Companies were organized by Dewey F. Weaver, Jr. ("Defendant"), James W. Moore, Jr., and West River Landing, L.L.C. ("Plaintiff"). At the time, Plaintiff's members were Lee Boyer, James Boyer, and W. Brent Lumpkin. By the time the instant suits were filed, Mr. Lumpkin was deceased and represented by Betty Sarver, the independent executor of his estate. The LCHR Agreement was

signed by Defendant and Mr. Moore on November 25, 2013, and by James Boyer and Mr. Lumpkin, on Plaintiff's behalf, on December 3, 2013; the Prien Lake Agreement was signed by Defendant and Mr. Moore on January 19, 2016, and by James Boyer and Mr. Lumpkin on January 27, 2016. In both instances, Lee Boyer, an attorney, notarized the signatures of his brother and Mr. Lumpkin. LCHR and Prien Lake were registered as a limited liability companies by the Louisiana Secretary of State on December 2, 2013, and May 28, 2015, respectively.

The Agreements provided that the Companies would be managed by their members, with the unanimous consent of the members required for major decisions. They further designated Defendant as the managing member and listed the duties to be performed by him, including acting "as development manager, without compensation, and" representing the Companies in any construction undertaken by them.

In furtherance of their stated purpose, the Companies entered into construction contracts with Diversified Construction Services, Inc. ("Diversified") for the construction of two Marriott-branded hotels in Lake Charles. On October 31, 2014, LCHR contracted for the construction of a Courtyard by Marriott ("Courtyard") hotel, and on December 8, 2015, Prien Lake contracted for the construction of a TownePlace Suites ("TownePlace") hotel. Both contracts were executed by Defendant on behalf of the Companies.

After construction was completed, the City of Lake Charles issued a certificate of occupancy to LCHR on July 12, 2016, after which the hotel opened on August 2, 2016. It issued a certificate to Prien Lake on April 20, 2017, which then opened on June 13, 2017. Pursuant to the Agreements, the hotels were managed by InterMountain Management, L.L.C. ("InterMountain"), a management company

2

owned or operated by Defendant. However, subsequent to Hurricane Laura's landfall on August 27, 2020, the Companies discovered deficiencies in the hotels' construction, including damage to both hotels' exterior due to long-term exposure to moisture. Thereafter, the Companies each filed suit against Diversified and its subcontractors on December 9, 2021, alleging that the deficiencies in construction were caused by their negligence and was a breach of the construction contracts. Ultimately, both suits were referred to arbitration and subsequently settled.

On April 8, 2024, Plaintiff, as a member of Prien Lake, filed suit against Defendant, in Docket Number 2024-1416, alleging that he breached his duties as member manager by failing to supervise Diversified and its subcontractors during the construction of the TownePlace hotel. It sought damages for the losses it suffered, as a member, as a result of Defendant's "breach of duty and negligence, or in the alternative gross negligence" under the Agreement.

In response, Defendant filed a dilatory exception of prematurity, a motion referring the claim to arbitration, and a request that the matter be stayed during that proceeding. He then filed peremptory exceptions of prescription and/or peremption and of no right of action, seeking the dismissal of Plaintiff's claim pursuant to La.R.S. 12:1502 and jurisprudence holding that an individual member has no right to sue for the damages sustained by a limited liability company.

On November 21, 2024, Plaintiff, as a member of LCHR, filed an identical lawsuit against Defendant, in Docket Number 2024-4921. On Defendant's unopposed motion, the two suits were consolidated. Thereafter, Defendant filed the identical exceptions, referral motion, and stay request in Docket Number 2024-4921 as filed in Docket Number 2024-1416.

3

During an April 3, 2025 hearing, testimony and exhibits were introduced into the record on Defendant's exception of prescription and/or peremption. The parties also stipulated that if called, the testimony of James Boyer would mirror that of his brother, Lee Boyer.

Terry Magnon, an interim building official for the City of Lake Charles, testified that certificates of occupancy were issued for the Courtyard hotel on July 12, 2016, and the TownePlace hotel on May 5, 2017. The issuance of these certificates, he stated, indicated that the structures "met a minimum code compliance[,]" "that they [were] now fit for occupancy[,]" and that the owners could proceed with their hotel operations. He agreed that when the certificates were issued, the "planning, design, and construction" of each hotel had been completed.

Defendant acknowledged that he was the Companies' designated member manager and that the purpose of the Companies was to "'[o]wn, construct and operate a hotel/motel business[.]'" He further acknowledged that following the hotels' construction, the Companies identified "several deficiencies in the planning, design, and construction of" the hotels, which led to the December 9, 2021 suits against Diversified. Defendant testified that his duty to supervise each hotel's planning, design, and construction had ended by the time the certificate of occupancy was issued and the Courtyard and TownePlace hotels opened on August 2, 2016, and June 13, 2017, respectively.

Lee Boyer testified that he learned about Defendant's failure to supervise the hotels' construction in September 2023, when he traveled to Baton Rouge to hear expert testimony during the arbitration proceedings against Diversified. While there, he learned that an InterMountain employee, who was present during the construction of each hotel, was there only to ensure that the construction complied with Marriotts'

4

standards rather than to supervise the construction as required by the Agreements. He stated that prior to September 2023, he thought that Defendant was supervising the construction:

> That is what I thought was going on. I mean, I was involved in the Operating Agreement. I was the lawyer that represented West River – those were the terms their attorney – Todd Cagle prepared the document, submitted it to me. We went back and forth on some things, and that was part of the deal was that Mr. Weaver was going to supervise the construction of the hotel.

Mr. Boyer testified that the Companies' December 9, 2021 suits against Diversified were filed after Hurricane Laura devastated the Lake Charles area in August 2020, and while he knew the suits were based on construction defects, he "didn't know . . . the magnitude of" the defects. Although he admitted that the filing of a lawsuit is enough to excite attention, he reiterated that he "didn't know the magnitude of what we were dealing with until we went to hear from the experts." Mr. Boyer also admitted that he "knew what [Defendant's] obligations were when we signed [the Agreements] because that is what we all agreed to is that he would supervise the construction[,] which he apparently didn't do."

The following exhibits were introduced into the record during the hearing: both certificates of occupancy, both Agreements, and a copy of a note compiled by Defendant in anticipation of the hearing, containing relevant dates and each member's ownership interest in the Companies.

At the conclusion of the hearing, the trial court orally ruled that Plaintiff's claims in both suits were prescribed and/or preempted pursuant to La.R.S. 12:1502:

> I agree that applying prescription is least favored by the Courts; but to interpret this case any other way would go against how I read statutes and how I interpret statutes. The more narrower the statute as opposed to the general statute.

5

So as far as Defendant's exception of prescription, peremption, the Court is granting that exception. I realize that it results – and can result like in medical and legal malpractice cases and some perhaps bad results and does not allow parties their day in court on a particular claim.

The Court reads 1502 as the statute that directs this case. This is a business action, business organization, the operating agreement; and it says actions shall apply. That is instructed to the Court. Actions shall be applicable to actions against a member – which Mr. Weaver is – against a manager, which Mr. Weaver is.

The one-year prescription in this statute and the three-year peremption, all apply to this case. More particularly, Under [sic] 1502(E) with regard to shall not be subject to suspension on any grounds or interruption.

The Court has read and studied the cases that – previously cited, the Suhren case that I previously cited; with regard to the 1502 application in corporations and businesses. I find those cases persuasive, applicable.

There was even a Third Circuit case – I don't know if I have it right in front of me that was cited that the Court followed. That is Suhren versus Gilbert, which I previously cited, 55 So. 3d, 941 [sic].

With regards to acknowledgement, in 1502, they cannot be suspended at peremption, suspension doesn't apply. Also Robert versus Robert Management Company case with regard to 1502 and its application, there should not be any suspension on any grounds whatsoever in *contra non valentem* which Defendant argued – which Plaintiff argued – excuse me – does not apply under 1502. And the Court interprets it that way.

In particular, with regard to the dates of the one-year prescription, the Court reads the operating agreement. There's no dispute with regard to the dates of the operating agreement when it was signed. The assignments back in 2016-17 and when damage was filed on the underlying case of December 9, 2021, under both ways of the Lake Charles Hotel Resorts Group for the CourtYard, prescription and peremption makes 1502 applicable to that matter; and both prescription and peremption applies since it was back in 2016, it was occupied and then opened.

As to the TownePlace matter, that testimony the Court received that Certificate was occupied (sic) – was issued on May 5th, 2017; opened in June of 2017. Both prescription and peremption would apply to that matter.

6

The lawsuit for TownePlace was not filed until April 8th of 2024, but you still have the duties learned of what happened when the suit was filed against Diversified with regard to the knowledge of the defect.

I do not find that the specific point where West River found that Mr. Weaver, particularly had some culpability in 2023, changes the knowledge of what the damage was.

Mr. Boyer testified with regard to his concerns of construction, which is why they filed the lawsuit in the first place. The Court is mindful – and it's been my interpretation practice, if you will, to essentially allow Plaintiffs to present their case. I just feel that the statutes and the interpretation of statute, it gives the Court no choice but to rule as it is ruling and granting these exceptions.

The trial court further held that Defendant's remaining exceptions, motions, and stay requests were rendered moot by this finding. A written judgment was rendered on June 4, 2025, sustaining Defendant's exception of prescription and/or peremption in both suits, and dismissing Plaintiff's claims with prejudice. It is from this judgment that Plaintiff appeals.

On appeal, Plaintiff assigns the following error: "The trial court committed legal error in wrongly interpreting LA. R.S. 12:1502 to include non-fiduciary claims for breach of contract."

**OPINION**

The supreme court, in *Succession of Lewis*, 22-79, pp. 5–6 (La. 10/21/22), 351 So.3d 336, 340 (alteration in original), set out the standard of review applicable to a judgment sustaining an exception of prescription and/or peremption:

> In *Mitchell v. Baton Rouge Orthopedic Clinic, L.L.C.*, 21-061, p. 5 (La. 10/10/21), 333 So.3d 368, 373, this Court held that the standard of review of a judgment pertaining to an exception of prescription turns on whether evidence was introduced at the hearing of the exception. If evidence is introduced, the lower court decisions are reviewed under a manifest error-clearly wrong standard of review. *Id*. (citation omitted.) However, when evidence is introduced, but there is no dispute regarding material facts, as in this case, the reviewing court is to apply a *de novo* standard of review. *Id*.

7

"[I]n reviewing a peremptory exception of prescription/peremption, Louisiana courts strictly construe the statute against peremption/prescription and in favor of the claim that is said to be extinguished." *Id.*

On review, statutory interpretation involves a question of law, which is reviewed de novo and questions whether the trial court's determination is legally correct. *Johnson v. Allstate Prop. & Cas. Ins. Co.*, 21-552 (La.App. 3 Cir. 4/27/22), 338 So.3d 109. In interpreting a revised statute, La.R.S. 1:3 provides, in part:

> Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.

Additionally, "[w]hen the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." La.R.S. 1:4.

### *Interpretation of La.R.S. 12:1502*

In its sole assignment of error, Plaintiff argues that the trial court legally erred in interpretating La.R.S. 12:1502(C) to include a a non-fiduciary breach of contract as one of the acts, omissions, or neglect covered by the prescriptive and/or peremptive periods found in that statute. Rather, it claims that the duties breached by Defendant were the "specific and unique duties outlined in the" Agreements, which "are separate and distinct from the fiduciary duties imposed by law upon managers of limited liability companies." (Emphasis deleted.) Thus, it argues that its claim against Defendant is for breach of contract and is subject to the ten-year prescriptive period found in La.Civ.Code art. 3499.

A breach of contract claim is a personal action subject to a ten-year liberative prescriptive period. La.Civ.Code art. 3499. More specifically, however, the prescriptive and/or peremptive periods in La.R.S. 12:1502 "apply to all business organizations formed under the laws of this state and shall be applicable to actions against any . . . member, manager, . . . managing partner, or other person similarly situated." La.R.S. 12:1502(A). Louisiana Revised Statutes 12:1502 further provides, in part:

> C. No action for damages against any person described in Subsection A of this Section for an unlawful distribution, return of an unlawful distribution, or for breach of fiduciary duty, including without limitation an action for gross negligence, but excluding any action covered by the provisions of Subsection D of this Section, shall be brought unless it is filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered, but in no event shall an action covered by the provisions of this Subsection be brought more than three years from the date of the alleged act, omission, or neglect.

> D. No action for damages against any person listed in Subsection A of this Section for intentional tortious misconduct, or for an intentional breach of a duty of loyalty, or for an intentional unlawful distribution, or for acts or omissions in bad faith, or involving fraud, or a knowing and intentional violation of law, shall be brought unless it is filed in a court of competent jurisdiction and proper venue within two years from the date of the alleged act or omission, or within two years from the date the alleged act or omission is discovered or should have been discovered, but in no event shall an action covered by the provisions of this Subsection be brought more than three years from the date of the alleged act or omission.

> E. The time limitations provided in this Section shall not be subject to suspension on any grounds or interruption except by timely suit filed in a court of competent jurisdiction and proper venue.

When a question arises regarding the prescriptive period applicable to a specific action, we answer that question by looking to "[t]he character of an action disclosed in the [plaintiff's] pleadings[.]" *Starns v. Emmons*, 538 So.2d 275, 277

9

(La.1989). Here, Plaintiff's damage claims rest on Defendant's breach of his duties as member manager. Its petitions specifically allege that Defendant "is responsible for his negligence, or in the alternative gross negligence, in failing to supervise the construction/contractors as required by the Operating Agreement, which resulted in damages to West River, as a Member of the Company."

Attached to Plaintiff's petitions were the Agreements, which designated Defendant as the Companies' member manager and set forth his duties, including that he shall:

> Act as development manager, without compensation, and the Company's representative in connection with the construction of all improvements which are part of the Project (the "Improvements"). Except as otherwise specified in this Agreement, the services to be provided shall include:
>
> (i) The coordination and management of architects, general contractors, subcontractors and suppliers, including, without limitation, the participation in conferences and the rendering of such advice and assistance as will aid in developing economical, efficient and desirable construction procedures; the review and approval of all requests for payment under all contracts and agreements related to the development of the Project; submission to the other Members of any suggestions or requests for changes which would in any reasonable manner improve the design, efficiency or cost of the Improvements under construction; and any other matters of negotiation, representation, consultation, advice and the presentation of such reports as may be reasonably required by the other Members which are generally required of development managers of similar projects[.]

Article 8.4.9(i).

Article 8.3 further provides that as member manager, Defendant "shall be responsible for supervising the general contractor, for the implementation of the decisions of the Members, and for conducting the ordinary and usual business and affairs of the Company as established and approved by the Members as of the date hereof and set forth in the Agreement."

10

In arguing that the trial court legally erred in interpreting La.R.S. 12:1502(C) to include a claim for breach of contract, Plaintiff relies on the first circuit's opinion in *Scott Green Properties, LLC v. Ramsey*, 24-695 (La.App. 1 Cir. 2/13/25), 406 So.3d 609. There, the court held that a breach of contract claim arising from a corporate officer's sale of shares was a personal action subject to ten-years liberative prescription. After reviewing the actions listed in La.R.S. 12:1502(C) and (D), the court noted that these actions have generally been described "as 'corporate mismanagement claims.'" *Id.* at 615. In reviewing the plaintiff's petition, the court found no allegations specifically alleging that he "committed any of the enumerated acts set forth in La. R.S. 12:1502(C) or (D); and, a breach of contract claim is not among the enumerated acts." *Id.* It further held:

> Although Mr. Roe is indisputably a shareholder of both MBHC and MBHP, his status as a shareholder in these corporations does not automatically mean that *any* action brought against him is subject to the prescriptive periods provided in La. R.S. 12:1502. It is possible to have a claim against an officer, director, or shareholder for actions taken outside of their officer/director/shareholder duties. *See Omni Energy Services Corp. v. Rhyne*, 14-322 (La. App. 3 Cir. 10/15/14), 149 So.3d 1282, 1285, n.1, *writ denied*, 2015-0001 (La. 3/27/15), 162 So.3d 387. Based on the allegations of the petition, and interpreting La. R.S. 12:1502 strictly against prescription, as we are required to do, we conclude that Mr. Green's claim against Mr. Roe is most appropriately classified as a personal action for breach of contract subject to ten-year prescription, rather than a "corporate mismanagement claim" under La. R.S. 12:1502.

*Id.* at 615-16.

We disagree that the holding in *Scott Green Properties* is controlling under these facts and with Plaintiff's contention that Defendant's duties as managing member vis-à-vis the other members, including Plaintiff, are purely contractual in nature, and thus, separate and apart from those fiduciary duties imposed on him by law under the Agreements.

11

In defining "fiduciary duty," Professors Morris and Holmes noted:

> The term "fiduciary duty" is vague. It does not describe just one consistently-interpreted, uniformly-applied standard of conduct, but rather an ill-defined set of suppletive duties implied by law in a wide variety of situations in which one person has been entrusted with the power either to make decisions or to take actions, directly or indirectly, on behalf of other persons. These duties may be described under generalized headings of "care," "loyalty," "good faith" and the like, but none of these generalized headings is much more helpful than the label "fiduciary" itself in determining the precise content of a *particular*, concrete duty to do or to refrain from doing some specific thing. The content and scope of these more particular forms of duty—the actual duties being enforced—should depend heavily on the reasonable expectations of the parties to the relationship.

7 GLENN G. MORRIS, WENDELL H. HOLMES, LOUISIANA CIVIL LAW TREATISE: BUSINESS ORGANIZATIONS § 2:17 (2nd ed. 2017 & Supp. Jan. 2025).

In examining the meaning of "fiduciary duty," the supreme court, in *Scheffler v. Adams and Reese, LLP*, 06-1774, pp. 6–7 (La. 2/22/07), 950 So.2d 641, 647–48, stated:

> Generally, whether a fiduciary duty exists, and the extent of that duty, depends upon the facts and circumstances of the case and the relationship of the parties. As a basic proposition, for a fiduciary duty to exist, there must be a fiduciary relationship between the parties. . . .
>
> A fiduciary relationship has been described as "one that exists 'when confidence is reposed on one side and there is resulting superiority and influence on the other.' " *Plaquemines Parish Commission Council v. Delta Development Company, Inc*, 502 So.2d 1034, 1040 (La.1987), *quoting Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn.1985).
>
> > The word "fiduciary," as a noun, means one who holds a thing in trust for another, a trustee; a person holding the character of a trustee, or a character analogous to that of a trustee, with respect to the trust and confidence involved in it and the scrupulous good faith and candor which it requires; a person having the duty, created by his undertaking, to act primarily for another's benefit in matters connected with such undertaking.
>
> *State v. Hagerty*, 251 La. 477, 492, 205 So.2d 369, 374 (1967), *quoting* 36A C.J.S. Fiduciary, p. 381. One is said to act in a fiduciary capacity "when the business which he transacts, or the money or property which

he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other." *Hagerty*, 251 La. at 493, 205 So.2d at 374–375, *quoting* BLACK'S LAW DICTIONARY (4th ed.1951).

The term "fiduciary" is defined in the Uniform Fiduciaries Law, LSA–R.S. 9:3801(2), as follows:

> "Fiduciary" includes a trustee under any trust, expressed, implied, resulting or constructive, executor, administrator, guardian, conservator, curator, receiver, trustee in bankruptcy, assignee for the benefit of creditors, partner, agent, officer of a corporation, public or private, public officer, or any other persons acting in a fiduciary capacity for any person, trust or estate.

The Uniform Fiduciaries Law appears in the Civil Law Ancillaries under **Code Title XV—Of Mandate.** By definition, a mandate is "a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal." LSA–C.C. art. 2989. The defining characteristic of a fiduciary relationship, therefore, is the special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor. *Plaquemines Parish Commission Council*, 502 So.2d at 1040; *Hagerty*, 251 La. at 493, 205 So.2d at 374–375.

Louisiana Revised Statutes 12:1311 provides that "[e]xcept as otherwise provided in the articles of organization, the business of the limited liability company shall be managed by the members, subject to any provision in a written operating agreement restricting or enlarging the management rights and duties of any member or group or class of members." Pursuant to La.R.S. 12:1314(A)(1), a member manager stands "in a fiduciary relationship to the limited liability company and its members and shall discharge his duties in good faith, with the diligence, care, judgment, and skill which an ordinary prudent person in a like position would exercise under similar circumstances." The member manager likewise owes a duty of loyalty to the limited liability company and its members. La.R.S. 12:1314(B).

13

Here, the members imposed a special relationship of trust and confidence in Defendant to manage the Companies by performing the duties set out in Article 8.4, including "[t]he coordination and management of architects, general contractors, subcontractors and suppliers[,]" and the incorporated duty to supervise. Article 8.4.9(i); Article 8.3. Accordingly, Defendant's duty to supervise the general contractor and its subcontractors during the construction of the hotels was a fiduciary duty owed by him to the Companies and its members.

While we agree with the outcome of *Scott Green Properties*, we disagree with the overbroad implication that the prescriptive and/or peremptive period in La.R.S. 12:1502(C) will never apply to a breach of contract claim against, as in this case, a member of a limited liability company in the exercise of his duties as manager. However, the facts in that case differ from those at issue here as the plaintiff there was a third party, and his suit was based on the defendant's personal actions rather than his corporate actions.

Here, it is undisputed that Plaintiff and Defendant are both members of the Companies and that Plaintiff's claims against Defendant are based on his breach of the very duties set out in the Agreements. Furthermore, the Agreements, which are binding upon the parties, provide that "[n]o Member shall be liable, responsible or accountable in damages or otherwise to the Company or a Member for any act performed or omitted by them other than for acts or omissions performed or omitted with gross negligence, in bad faith or fraudulently." Article 9.1; Article 18.1 (Article 20.1 of the LCHR Agreement). Accordingly, we find that the trial court did not legally err in finding La.R.S. 12:1502(C) applicable to Plaintiff's claims against Defendant based on his failure to supervise Diversified and its subcontractors during the construction of the hotels.

***Application of La.R.S. 12:1502***

The prescriptive and/or peremptive period found in La.R.S. 12:1502 is identical to those found in statutes pertaining to legal and medical malpractice actions. La.R.S. 9:5628; La.R.S. 9:5605. In summarizing La.R.S. 9:5628, the supreme court, *In re Medical Review Panel for Claim of Moses*, 00-2643, pp. 9–10 (La. 5/25/01), 788 So.2d 1173, 1179–80, stated:

> Section 5628 is a hybrid statute, providing both a one-year prescriptive period, including an incorporation of the discovery rule, and a three-year repose period; the latter repose rule acts to cut off the discovery rule incorporated into the former prescriptive period. This type of hybrid statute "not only limits the time following discovery during which the plaintiff must institute his action, but also sets an outer or overall limitation, one based on the length of the period following the negligent act, beyond which the action is barred, regardless of subsequent discovery." 1 David W. Louissell & Harold Williams, *Medical Malpractice* ¶ 13.02[2][b] at 13–40 (1999)(citing Louisiana's overall limit of three years); *Benge v. Davis*, 553 A.2d 1180 (Del.1989)(describing similar hybrid statute as codifying the "inherently unknowable" injury rule known as the "time of discovery rule," and limiting it to a finite three-year period). The repose rule functions as "a counter rule to the accrual-discovery rule by adding an alternative prescriptive period which begins running at the time of the defendant's act rather than at the time harm was inflicted or discovered." 1 Dan B. Dobbs, *The Law of Torts* § 219 at 557 (2001)(citing *Branch*, *supra*). Under Section 5628 this means that plaintiff gets the benefit of the discovery rule, but only during the first three years following the alleged act of malpractice.

The facts at issue in these suits are not in dispute. Defendant, as member manager, had a duty to supervise Diversified and its subcontractors while each hotel was being constructed. Once construction was completed, the Courtyard hotel was issued a certificate of occupancy on July 12, 2016, and opened for business on August 2, 2016. A certificate of occupancy was issued to the TownePlace hotel on April 20, 2017, and it opened on June 13, 2017. Thereafter, the Companies discovered deficiencies in the planning, design, and construction of both hotels and filed suit against Diversified on December 9, 2021. Lee Boyer admitted he learned

that Defendant failed to supervise Diversified and its subcontractors during the construction as required by the Agreements, in September 2023. Plaintiff, as a member of Prien Lake and LCHR, filed the suits at issue on April 8, 2024, and November 21, 2024, based on Defendant's breach of this duty.

The actual dates that Defendant breached this duty during the construction is unknown. However, at the latest, Defendant's duty to supervise ended with the issuance of the certificates of occupancy on July 12, 2016 (Courtyard hotel) and April 20, 2017 (TownePlace), because as indicated by Mr. Magnon, each hotel was ready for operation at the time of issuance. As Plaintiff's suits were filed more than three years from those dates, its claims against Defendant were perempted pursuant to La.R.S. 12:1502(C). Accordingly, the judgment of the trial court sustaining Defendant's exceptions of peremption in both suits is affirmed.

## DECREE

For the forgoing reasons, the judgment of the trial court sustaining the exceptions of peremption in favor of Dewey F. Weaver, Jr. and dismissing the claims of West River Landing, L.L.C. against him with prejudice in Docket Numbers 2024-1416 and 2024-4921 is affirmed. The costs of these appeals are assessed to West River Landing, L.L.C.

**AFFIRMED.**

16