UNITED STATES of America

v.

Richard TONRY.

Crim. A. No. 85–425.

United States District Court,
E.D. Louisiana.

April 25, 1986.

Daniel Linhardt, Joseph Giarrusso, Asst. U.S. Attys., New Orleans, La., for plaintiff.

Patrick Fanning, New Orleans, La., for defendant.

ORDER AND REASONS

FELDMAN, District Judge.

Defendant filed a Motion to Dismiss the Indictment contending that the Court is

without jurisdiction in a matter involving an alleged bribe of the Chairman of the Chitimacha Indian Tribe, that the alleged travel which is the focus of the indictment cannot, as a matter of law, form the basis for a charge of illegal conduct, and, finally, that under the facts mentioned in the indictment, defendant committed no unlawful activity which could constitute commercial bribery within the meaning of R.S. 14:73. For the reasons expressed below, the Motion was denied.

Defendant, Richard Tonry, was indicted on two counts of interstate travel in aid of racketeering and one count of conspiracy to do so, in violation of 18 U.S.C. § 1952. The unlawful activity complained of in the indictment implicates local law, specifically, the Louisiana commercial bribery laws as announced in R.S. 14:73. The pertinent Louisiana statute defines commercial bribery as the giving or offering to give anything of value "to any private agent, employee, or fiduciary, without the knowledge and consent of the principal or employer" with the intent to influence the recipient's action relating to the affairs of his employer or principal. In this case, the recipient of the bribe was the Chairman of the Tribal Council of the Chitimacha Indian Tribe, located near New Iberia, Louisiana.[1] The alleged bribe took place in New Orleans. The defendant contends that the Chairman of the Tribal Council of the Chitimacha tribe, a sovereign Indian nation, cannot be held to be a private agent, employee, or fiduciary within the meaning of Louisiana law. Rather, it is argued, he is an employee of the Indian tribal government and is not a private employee as contemplated by R.S. 14:73. Furthermore, it is argued, neither the State of Louisiana (for purposes of a violation of R.S. 14:73) nor the federal government has jurisdiction over this matter, which is characterized as an Indian tribal matter.[2] Finally, defendant urges that the travel alleged in the indictment may not be the subject of any criminal activity because it was not directly related to furthering that activity in a significant manner.[3]

BACKGROUND

A brief sketch of the history of the events which are the subject of this indictment will help place the issues raised by this Motion into focus.

Defendant was indicted on November 22, 1985 by a Federal Grand Jury. He was charged with conspiracy to engage in interstate transportation in aid of a racketeering enterprise, and two counts of engaging in interstate transportation in aid of racketeering, all in violation of 18 U.S.C. §§ 371, 1952, and 2.

The indictment sheds light on the attempt of the Chitimacha Indians to improve what they thought was a deteriorating financial condition. The Chitimacha Indians, who once controlled a sizable portion of southern Louisiana, are confined to a small reservation near New Iberia, Louisiana. The Tribe, which now numbers a few hundred individuals, felt it was unable to generate income on its reservation. Larry Burgess, Chairman of the tribe,[4] decided

---

**1.** The Chairman, Larry Burgess, was similarly indicted and pled guilty on November 6, 1985 in Section "D" of this Court.

**2.** Defendant contends that the Chitimacha reservation is in Indian Country as defined in 18 U.S.C. § 1151(a), and that state criminal jurisdiction is preempted by both federal protection of tribal self-government and federal statutes relating to the governance of Indians, their tribes, property, and federal programs regarding Indians. See *U.S. v. Mazurie*, 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975).

**3.** See *U.S. v. Raineri*, 670 F.2d 702 (7 Cir.1982), cert denied 459 U.S. 1035, 103 S.Ct. 446, 74 L.Ed.2d 601 (1982).

**4.** The Chitimacha tribe is a sovereign Indian nation. See *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). But sovereign immunity does not extend to individual members or officers of the tribe unless they are acting in the course of their official duties (there is no such contention here). See *Santa Clara Pueblo* at 1677; *Puyallup Tribe, Inc. v. Dept. of Game of Washington*, 433 U.S. 165, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977). Indian tribes are free to structure their government as they wish, if it does not violate the Indian Civil Rights Act, 25 U.S.C. § 1301 et seq.; *Howlett v. Salish and Kootenai Tribes of Flathead Reservation, Montana*, 529 F.2d 233 (9 Cir.1976). The Chitimacha tribe chose to govern itself by a

that a way to increase the tribe's revenues on the reservation would be to institute bingo games. The Tribal Council authorized him to negotiate an appropriate contract for the Reservation. Burgess' first attempts were unproductive.[5] When Tonry learned of the efforts of Burgess, he formed a corporation, Western Indian Resources, became one of three major stockholders of the company, and began negotiating with Burgess. The indictment charges that Tonry eventually paid Burgess $25,000 as a bribe and agreed to pay an additional monthly amount of $5,000 each month in order to induce Burgess to award the bingo contract to Tonry's company. On August 15, 1984, the indictment charges, a contract was granted awarding Tonry's company the exclusive rights to operate the bingo on the Reservation.[6] Thereafter, the Government charges, Tonry, in need of more money, traveled to San Francisco in November 1984 to obtain additional investment capital. Finally, says the Government, Tonry went to Washington to meet with representatives of the Bureau of Indian Affairs in order to answer their questions regarding Tonry's operations, since the Bureau had to approve the venture before Tonry could begin.[7]

RULING

*Burgess Is A Fiduciary*

■ If Burgess is neither a private agent, employee, or fiduciary, within the meaning of R.S. 14:73,. Tonry cannot be said to have committed any unlawful activity within the meaning of the federal statutes under which he is charged. Defendant's argument on this point essentially urges that Burgess cannot be a private agent, employee, or fiduciary as the Chairman of a sovereign Indian nation. The argument is untenable and unduly restrictive; it appears to be contrary to common

sense and the plain language and intent of the statute.

Tonry allegedly paid the bribe in New Orleans, off the Reservation. The bribe was paid to the tribal Chairman, who had been placed by his tribe in a classic position of trust and confidence to negotiate a commercial contract on their behalf. The payment to Burgess was allegedly made without the tribe's knowledge or consent and was made for no other reason other than to persuade, induce, influence, or entice Burgess to enter into a contract with Tonry's corporation contrary to the rules of honesty and integrity. See *City of New Orleans v. Belas,* 235 La. 867, 106 So.2d 291 (1958). Thus, the essential elements of commercial bribery are present. To the Court, there is little doubt, if the charges in the indictment are true and correct, that Burgess was acting unqualifiedly as a fiduciary of his tribe. In *State of Louisiana v. Hagerty,* 251 La. 477, 205 So.2d 369 (1967) cert. denied 391 U.S. 935, 88 S.Ct. 1848, 20 L.Ed.2d 855 (1968), reh. denied 393 U.S. 899, 89 S.Ct. 70, 21 L.Ed.2d 187 (1968), the Louisiana Supreme Court spoke clearly to the meaning of fiduciary; the Court's words dramatically fit this situation:

"The word 'fiduciary,' as a noun, means one who holds a thing in trust for another, a trustee; a person holding the character of a trustee, or a character analagous to that of a trustee, with respect to the trust and confidence involved in it and the scrupulous good faith and candor which it requires; a person having the duty, created by his undertaking, to act primarily for another's benefit in matters connected with such undertaking ..."

Id. at 374. The *Hagerty* court stated that the central feature of one's fiduciary responsibilities is the transaction of business for the benefit of another to whom he stands in a relation implying and necessi-

Tribal Council, elected by members of the Chitimacha nation, with an elected Chairman.

**5.** He dealt with the Butcher brothers of Tennessee, but they were unable to undertake the financial commitment necessary.

**6.** It is at that time that the alleged $25,000 bribe was paid to Burgess.

**7.** In early December 1984, the Government charges Tonry paid Burgess $5,000 more in accordance with their agreement.

tating great confidence and trust. Chairman Burgess undisputably fits that model.

*The Court Has Jurisdiction*

 This Court also believes that federal jurisdiction has been properly invoked, and feels that this argument requires only brief attention. The indictment charges that Tonry committed the unlawful acts off the Reservation. That is critical to the flaw in defendant's position. The indictment charges one who is not an Indian with the commercial bribery of an Indian, which took place in New Orleans. Thus, both the federal and state governments have an interest in protecting the integrity of their laws by exercising jurisdiction.

Federal and state jurisdiction is not always preempted by Indian concerns. See F. Cohen, Handbook of Federal Indian Law, 348–349, 352–353 (1982). See also *United States v. Torres*, 733 F.2d 449 (7 Cir.1984), cert. denied — U.S. ——, 105 S.Ct. 204, 83 L.Ed.2d 135 (1984), (Wisconsin state court had jurisdiction to punish an Indian who committed a crime off the reservation and within the state territory).

Since the indictment charges a non-Indian with commercial bribery of an Indian off of the reservation, this Court has jurisdiction of the offense for reasons strikingly analogous to *Torres*.

*Tonry's Travel*

 Finally, the Fifth Circuit has made it clear that travel which is incidental to some criminal activity need not form the essence of the unlawful activity in order to provide a basis for a criminal offense. Thus, all that is required is that Tonry's travel was somehow connected with the unlawful activity so as to facilitate it or assist its success. The trip to San Francisco to raise money, and the trip to Washington to answer the Bureau's questions about the operation were complimentary to the implementation of the bingo operation and satisfied the tests of the Fifth Circuit. *United States v. Perrin*, 580 F.2d 730, 735–736 (5 Cir.1978), rehearing denied 585 F.2d 520, cert granted 440 U.S. 956, 99

S.Ct. 1496, 59 L.Ed.2d 199 affirmed 444 U.S. 37, 100 S.Ct. 311, 62 L.Ed.2d 419 (1979). See *United States v. Pecora*, 693 F.2d 421, 424 (1982), cert denied 462 U.S. 1119, 103 S.Ct. 3087, 77 L.Ed.2d 1348 (1983). Tonry's trips were for the purpose, at least as claimed in the indictment, of executing the operation, and that is all that is required.

Accordingly, for the foregoing reasons,

IT IS ORDERED:

The defendant's Motion to Dismiss the indictment is DENIED.