702 So.2d 997 (1997)
BATON ROUGE AUDUBON SOCIETY, INC., Plaintiff-Appellee,
v.
Dusty SANDIFER, in his Capacity as Cameron Parish Police Juror, the Cameron Parish Police Jury, and the Parish of Cameron, Defendants-Appellants.
No. 97-464.
Court of Appeal of Louisiana, Third Circuit.
October 29, 1997.
*998 Lisa W. Lavie, New Orleans, Brett M. Hager, Mary Penny Thompson, Roberta Stewart, for Baton Rouge Audubon Society, Inc.
Glenn W. Alexander, Cameron, for Dusty Sandifer, etc., et al.
Before YELVERTON, COOKS and GREMILLION, JJ.
YELVERTON, Judge.
This is an appeal from a permanent injunction against the Cameron Parish Police Jury forbidding the enforcement of its "Grass and Weeds" ordinance insofar as it affects 21 lots in Little Florida Subdivision owned by the Baton Rouge Audubon Society, Inc. The ordinance makes it unlawful for owners of property within specified subdivisions of Cameron Parish to "fail to regulate the growth or accumulation of grass, obnoxious weeds, or other deleterious or unhealthful growths" on their property. It also provides a method of enforcement that allows the police jury to remove the vegetation and assess the cost to the owners.
In July 1996 the "Grass and Weeds" ordinance was amended to add Little Florida as a subdivision covered by its provisions, and shortly thereafter the parish sent a notice of violation to the Audubon Society. It was in response to that notice of violation that the Audubon Society sued to enjoin enforcement of the ordinance and for a declaratory judgment that the ordinance was unconstitutional either facially or as applied to the Audubon Society. The issuance of a temporary restraining *999 order was followed by a preliminary injunction. Following a trial, the district court permanently enjoined the police jury and its agents from entering the Audubon Society property and from removing or destroying the vegetation there. From that judgment, the police jury appealed. We affirm.

FACTS
The history of its ownership shows that it was for the very purpose of nurturing natural vegetation that the Audubon Society acquired and now maintains the property. In 1984 the Audubon Society started acquiring property on the front chenier[1] of Cameron Parish along the Gulf of Mexico. These acquisitions were prompted by a perceived need to restore natural chenier vegetation, much of which had been lost by subdivision development and cattle use. Expert testimony at trial indicated that over one-half of the cheniers along the Texas-Louisiana coastline had been lost. The Audubon Society acquired its land through donations and purchases made with funds either raised by the Audubon Society or borrowed from other environmental groups. By 1995 the Audubon Society owned 41 acres on the chenier.
The Audubon Society's stated objective for the acquisition of this land was to restore and preserve the protective chenier habitat for migratory songbirds and butterflies. More than seven acres of this sanctuary is situated in Little Florida Subdivision, the property involved in this injunction. The Audubon Society is the majority landowner in Little Florida, owning 21 of the 36 lots. A good portion of its land was donated to it by the original subdivision developers.
The Audubon Society entered into a 25-year contract with a federal agency, the United States Fish and Wildlife Service, in 1993. Under this agreement, the Fish and Wildlife Service has supplied funds for the planting and maintaining of trees on the Audubon Society's properties to help reestablish the natural chenier vegetation. More than 1300 chenier live oak seedlings were planted in the sanctuary in 1993. In 1996, 150 hackberry seedlings and another 300 chenier live oak seedlings were planted. Many of these seedlings were planted on the Little Florida properties. The Fish and Wildlife Service has also given the Audubon Society a grant to erect a fence around the sanctuary. Much of the fence is complete.
For the past five to eight years, the Audubon Society has cultivated natural vegetation along with the saplings in the sanctuary. The undergrowth vegetation provides shade for and stimulates the growth of the seedling trees. The chenier oaks and their undergrowth give the migratory songbirds a place for protection and feeding before and after their long trips across the Gulf of Mexico. They are a particularly necessary resource for migrants reentering the United States on trips that begin on south winds but encounter "northers," causing an exhausted "fall out" on the beach. A large percentage of the neotropical migrants coming to North America go right through the chenier in the western part of Cameron Parish. Both the chenier oak saplings and the undergrowth, or "understory," are necessary to restore the disappearing habitat. This was the testimony of experts, notably John Walther, who acquired his knowledge during the 28 years he managed the Sabine National Wildlife Refuge in Cameron Parish.
Of the few lots of Little Florida owned by individuals, seven are surrounded by the sanctuary. On four of those seven lots there are houses being used as homes. Of the remaining privately owned individual lots, four are used either as camps or homes on the beachfront and are separated from the sanctuary by a street. A fence marks the boundary lines between the Audubon Society's properties and the lots of the individuals.
*1000 In July 1996 three police jurors visited the sanctuary in response to complaints by a few home owners of Little Florida. The complaint was that the undergrowth encourages insects and small nuisance animals and that it was a fire hazard. The police jury amended its "Grass and Weeds" ordinance to include Little Florida Subdivision and then immediately took enforcement steps which led to the injunction and this appeal.

HOUSEKEEPING ISSUES
Before addressing the merits, it is necessary that we address the question of our jurisdiction. Appellant's brief does not comply with Rule 2-12.4 of the Louisiana Uniform Rules of Court, Courts of Appeal. The appellant did not set forth the jurisdiction of this court to hear this appeal. In the course of its oral reasons for judgment in this case, the trial judge said that enforcement of the ordinance "under these particular circumstances ... is not a legitimate exercise of the police jury's police power...." Both sides in their briefs argue constitutional issues. However, we do not think that the appellant seriously believes that the judgment finds the ordinance unconstitutional. Only the supreme court has jurisdiction of an appeal if an ordinance has been declared unconstitutional. La. Const. Art. V, § 5(D)(1). The fact that the police jury appealed to us, and not to the supreme court, is a recognition that the court of appeal has jurisdiction, which is inconsistent with taking the position that the trial court ruled the ordinance unconstitutional. Moreover, this court, determining its own jurisdiction, is mindful that constitutional rulings should be avoided when the case can be disposed of on the basis of nonconstitutional issues. Blanchard v. State, through Parks & Recreation Com'n, 96-0053 (La.5/21/96); 673 So.2d 1000. The trial court's judgment does not recite that the ordinance is unconstitutional, and the reasons for judgment did not indicate which constitutional provisions might be violated. We conclude that we have jurisdiction because the case can be decided on the basis of a nonconstitutional issue, as we will hereafter explain.
Appellant's brief does not conform with Rule 2-12.4 in another respect. The rule requires that appellant set forth in his brief "a specification or assignment of alleged errors relied upon, [and] the issues presented for review...." The police jury's brief contains neither. Rule 1-3 limits the scope of review of the Courts of Appeal to "issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise." We find that appellant's brief contains an argument that sufficiently outlines the errors the police jury claims were made by the trial court. Appellant argues that the trial court's decision was "without any legal foundation whatsoever" and that the evidence was insufficient to support the decision. We therefore address those arguments.

OPINION
In reasons for judgment, the trial judge found that the evidence established that there is a recognized ecological need for the maintenance and perpetuation of these chenier growths as reestablished by the Audubon Society. The judge found that a detailed development plan is in motion and the plan is an ongoing project with certain specific goals. He found that the plan was extraordinary but nevertheless legitimate. The trial judge found that this was not a case where the landowner, the Audubon Society, had neglected or abandoned its property, and its resistance to compliance with the ordinance was not a ruse or a charade being used to mask neglect of the property. There was not merely substantial evidence on which to reach these conclusions: the evidence was overwhelming.
Our courts have recognized that even where an ordinance is constitutional, the public body whose power it is to enforce that ordinance cannot act in an arbitrary and capricious manner. Coliseum Square Ass'n v. New Orleans, 544 So.2d 351 (La. 1989); Pasqua v. St. Landry Parish Police Jury, 94-01196 (La.App. 3 Cir. 3/1/95); 651 So.2d 430. In reviewing the decisions of public bodies, the courts will not interfere with the functions of those bodies in the *1001 exercise of the discretion vested in them unless they abuse their power by acting capriciously or arbitrarily. Id. "Capriciously" has been defined as a conclusion with no substantial evidence to support it or a conclusion contrary to substantiated competent evidence. The word "arbitrary" implies a disregard of evidence or of the proper weight thereof. Id.
Application of Cameron Parish's "Grass and Weeds" ordinance to the property owned by the Audubon Society in the Little Florida subdivision is an arbitrary and capricious exercise of the police jury's police power under the circumstances of this case. The weight of the evidence presented at trial shows that the vegetation on the property does not fall within the commonly understood definition of a "weed." Nor did the weight of the evidence show that there was a failure "to regulate the growth or accumulation of grass ... or other deleterious or unhealthful growths."
Charles Fryling, an expert witness whose testimony the trial court found particularly impressive, was a professor of landscape architecture at Louisiana State University. He testified that the understory, or undergrowth, at the sanctuary is not composed of weeds. It was his opinion that the undergrowth at the sanctuary is composed of valued plants, purposefully planted by the Audubon Society and essential to the purpose of the sanctuary. He recognized that "weed" is a subjective term and, not being defined in the ordinance, was open to interpretation. Ernestine Horn, the Administrator for the Cameron Parish Police Jury, was responsible for enforcing the ordinance, and she testified, "I don't have a definition of weed." She further testified that the Cameron Parish Police Jury had no set standards for enforcing the ordinance in determining what was a "weed" in order to determine if there is a violation. It was her personal opinion that the decision of whether a plant is a weed is simply "black and white." A member of the police jury, Charles A. "Dusty" Sandifer, said, "I really could not define a weed; but, you know, what some people calls [sic] a weed, some others may call a food." None of these individuals offered an explanation of "deleterious" or "unhealthful" growths. The definition of "weed" introduced at trial, from Webster's Ninth Collegiate Dictionary, was "a plant that is not valued where it is growing and is usually of rank growth, especially one that tends to overgrow or choke out more desirable plants."
It was overwhelmingly established that the undergrowth of vegetation is valued by the owner of the property, the Audubon Society. The weeds cannot be considered obnoxious, nor can the grass and weeds be deemed "deleterious or unhealthful growths," considering the testimony. Expert testimony at trial evidenced that the vegetation in the sanctuary is not only desirable for the Audubon Society's purposes and goals but even necessary for their accomplishment.
La. Const. Art. I, § 4 protects the right of every person to acquire, own, control, use, enjoy, protect, and dispose of private property. If the Audubon Society is compelled to destroy its habitat, not only will its property become useless for the purpose for which it was acquired, but it could very well entail considerable additional expense to the owner. David W. Frugé, field supervisor for the Fish and Wildlife Service under the United States Department of the Interior, wrote a letter to the Cameron Parish Police Jury regarding the wildlife habitat development agreement between the Service and the Audubon Society. He explained that under their long-term contract the Service has provided the Society with financial support. He stated that "if the Cameron Parish Police Jury expands the existing weed ordinance to include the Audubon Society's migratory bird sanctuaries, it is possible that the Audubon Society will be required to remove trees planted on their property under our existing Partners agreement, and to reimburse the Service for all costs incurred in establishing those trees."
The trial judge undoubtedly took this potential financial loss into consideration, together with the loss of the right to use its property for the legitimate purpose for which it was acquired, in weighing the respective competing rights of the landowners in the subdivision and in evaluating the decision of the police jury to take sides by means of the enforcement of its ordinance. The great *1002 weight of the evidence shows that the Audubon Society was using its property in an unusual, but lawful manner. The evidence regarding the value of that use to the owner was not disputed. By contrast, the evidence regarding the offensiveness of the habitat to the other owners of the subdivision was weak, the only solid evidence being that it caused an increase in mosquitos. The only evidence supporting the police jury's decision to enforce the ordinance was the complaints of the other property owners and not a perceived public need involving the Parish of Cameron. The vast weight of the evidence leaves no doubt that fair play is best served by the injunction rendered by the trial judge. Enforcement of the ordinance was clearly arbitrary and capricious.
We affirm the trial court's permanent injunction forbidding enforcement of the ordinance against the Baton Rouge Audubon Society in the Little Florida Subdivision. The Cameron Parish Police Jury will pay all costs.
AFFIRMED.
NOTES
[1] The petition defines "chenier" from Glossary of Geology, Bates and Jackson, 2d Ed., 1980, as follows: "A long narrow wooded beach ridge or sandy hummock, 3 to 6 m. high, forming roughly parallel to a prograding shoreline seaward of marsh and mud-flat deposits (as along the coast of SW Louisiana), enclosed on seaward side by fine-graded sediments, and resting on foreshore or mud-flat deposits. It is well drained and fertile, often supporting large evergreen oaks or pines on higher areas; its width ranges from 45 to 450 m. and its length may be several tens of kilometers. Etymol. French chene, `oak'. Obsolete syn: cheniere."