|,YELVERTON, J.
There are two issues in this case. The first is whether the Avoyelles Parish Police Jury had the power to remove and replace members of the Gaming Revenue Distribution Committee (the committee) that had been recognized by La.R.S. 33:3005. The second is whether the newly constituted *843 committee properly ^determined the proportion of gaming revenue funds to be distributed to political subdivisions of the Parish of Avoyelles.
BACKGROUND FACTS
In 1992 the Tuniea-Biloxi Indian Tribe of Louisiana entered into a Tribal-State Compact with the State of Louisiana for the Conduct of Class III Gaming. Among its other provisions, the compact obligated the Tribe to make quarterly financial contributions to the State to offset and defray the expenses resulting from the conduct of Class III gaming in Avoyelles Parish.
In October 1994 the Avoyelles Parish Police Jury created a special account for, casino gaming revenues dedicated to local government and appointed a committee, calling it the Gaming Revenue Distribution Committee, to help determine how the proceeds paid by the Tribal Casino under the compact should be distributed. The original committee was composed of eight members identified as:
1) State Senator
2) State Representative
3) Sheriff
4) District Attorney
5) President of the Police Jury or his representative
6) President of the School Board or his representative
7) President of Parish Mayors Council or his representative
8) Representative of the Tribe
This committee determined at its first meeting in 1994 that the initial proportions for the distribution of the funds were to be as follows:
Police Jury 25%
School Board 15%
Law Enforcement 80%
District Attorney 5%
Municipalities 25%
lain 1995 the Louisiana Legislature passed Act 1060, a local or special law which became La.R.S. 33:3005, to provide for the allocation and use of monies by the Avoyelles Parish Police Jury in a fund which it designated the Local Government Gaming Mitigation Fund. This statute is set forth in full as follows:
A. Beginning October 1, 1995, and each quarter thereafter, as received, the state treasurer shall credit to the Bond Security and Redemption Fund all financial contributions received by the state of Louisiana under the provisions of that compact between the state and the Tuniea-Biloxi Indian Tribe of Louisiana entitled, “Tribal-State Compact for the Conduct of Class III Gaming Between the Tuniea-Biloxi Indian Tribe of Louisiana and the State of Louisiana”, as amended and hereinafter known as the “compact”; and after a sufficient amount is allocated from that fund to pay all the obligations secured by the full faith and credit of the state which become due and payable within any fiscal year, the treasurer shall pay the remainder of such funds into a special fund which is hereby created in the state treasury and designated as the “Avo-yelles Parish Local Government Gaming Mitigation Fund”, hereinafter referred to as the “fund”.
B. The monies in the fund shall be subject to an annual appropriation by the legislature and shall be used solely to offset and defray the expenses of certain political subdivisions within Avo-yelles Parish as provided in Subsection C of this Section which result from the conduct of Class III gaming. All unex-pended and unencumbered monies in the fund at the end of each fiscal year shall remain in the fund; the treasurer shall invest all monies in the fund in the same manner as the monies in the state general fund and all interest earned shall remain to the credit of the fund.
C. Within ten days of the deposit of the monies into the fund each quarter, the state treasurer shall, in accordance with the provisions of Subsection B of *844 this Section, remit all such monies to the Avoyelles Parish Police Jury. The Avo-yelles Parish Police Jury shall, within ten days of the receipt of such monies, distribute all such funds to the governing authority of the political subdivisions of Avoyelles Parish as determined by the |4Gaming Revenue Distribution Committee created by the parish governing authority.
D. Notwithstanding Subsection C, the funds will be distributed as follows for the first year, beginning October 1, 1995:
(1) Avoyelles Parish Police Jury-twenty-five percent.
(2) Avoyelles Parish Law Enforcement District-thirty percent.
(3) The district attorney for the Twelfth Judicial District-five percent.
(4) Avoyelles Parish School Board-fifteen percent.
(5) The municipalities in Avoyelles Parish-twenty-five percent, to be distributed to the individual municipalities in accordance with a formula developed by the Avoyelles Parish Mayors Association and approved by the police jury.
E. The Gaming Revenue Distribution Committee shall meet annually prior to October first each year to determine the proportion of funds to be distributed to each political subdivision of the parish. The Avoyelles Parish Mayors Association shall develop a formula for the distribution of the revenues allocated for the municipalities in the parish.
Before continuing our narration of the background facts, we pause to make a few observations about this special statute. For one thing, it did not create the Gaming Revenue Distribution Committee. Subsection C merely recognized the existence of the committee already created by the parish governing authority. Subsection C bestowed upon that committee the authority to determine the distribution of the funds to political subdivisions of the parish. Subsection D provided a plan of distribution for the first year, beginning October 1, 1995, only. Subsection E mandated that the committee meet annually thereafter prior to October | ¡¡first each year, to determine the plan of distribution. The statute is silent as to the membership of the committee. That the committee is but an arm or agency of the parish governing authority is made clear in Subsection C which provides that the state treasurer shall remit the monies in the fund to the Avoyelles Parish Police Jury, and the same subsection also declares that it is the Avo-yelles Parish Police Jury which shall distribute the funds to the governing authority of the political subdivisions of Avoyelles Parish.
Continuing with our narration of the background facts, we note that, although the committee had the authority to change the allocation for the year beginning October 1, 1996, apparently no changes occurred. However, on August 12, 1997, the Police Jury met and replaced the membership of the committee, and the committee later made changes in the allocation. The new committee members were:
1) 3 representatives from the Police Jury
2) 1 representative from the Mayors Association
3) 1 representative from the School Board
Now, instead of eight members, the committee consisted of five members.
The new committee members then met on August 19, 1997. This committee decided that, effective January 1, 1998, the revenues were to be distributed as follows:
Police Jury 40%
School Board 25%
Law Enforcement 8%
District Attorney 2%
Municipalities 25%
The committee met again on September 8, 1997, for public input on the above allocation. Because no one came forward at the September meeting, the ^committee implemented the above allocation. This *845 allocation, it is obvious, increased the shares of the Police Jury and the School Board and decreased the shares of the Law Enforcement District and the District Attorney. The joint share of the municipalities stayed the same.
The Law Enforcement District of the Parish Of Avoyelles[1] filed a petition for an injunction against the Police Jury and the four members of the committee who had voted for the new allocation of funds. (The Police Jury and the School Board representatives had voted for the new allocation of funds, and the Mayors Association representative had abstained from voting). Eddie Knoll, as the district attorney of Avoyelles Parish, intervened in the proceedings asking for the same relief as the Law Enforcement District.
The trial court, after finding that it was “unlawful and invalid” for the Police Jury to “reconstitute” the committee, then declared that the changing of the formula for the distribution of gaming monies by the new committee was violative of the spirit and intent of La.R.S. 38:8005, and was, therefore, likewise “illegal and invalid.” The trial court issued a permanent injunction against the Police Jury enjoining it from distributing any money appropriated by the legislature according to the new formula and finally enjoined the new committee from meeting and determining the distribution of funds. The Police Jury appeals this judgment. We reverse.
^DISCUSSION

1. The Removal and Replacement of Committee Members.

The Police Jury’s principal assignment of error is that, contrary to the trial court’s decision, the Police Jury had the power to remove and replace the members of the committee. We agree.
The trial court, in effect, ruled that the Police Jury and the committee were two separate entities and that the Police Jury had no power over the committee at all. The trial court found that, based on the totality of the circumstances, “the action of the Jury in reconstituting the Committee in the manner stated was violative of the spirit and intent of R.S. 33:3005.” The court then ruled that “[t]he subsequent action of the five member committee is held to be invalid for the reason that it was without authority — the injunctive relief will be granted.” Therefore, we will first examine the authority of the Police Jury to remove and replace the members of the committee.
In Avoyelles Parish the Police Jury is the parish governing authority. La.R.S. 33:1221. A police jury in Louisiana is a creature and subordinate political subdivision of the State and, as such, possesses only those powers conferred by Louisiana’s Constitution and statutes. La. Const, art. VI, § 7(A); Bagert v. State, Bd. of Ethics, 588 So.2d 1264 (La.App. 1 Cir.1991) (citing Rollins Environmental Serv. v. Iberville Parish, 371 So.2d 1127 (La.1979)).
Both the Louisiana Constitution and the statutes envision that a police jury may create committees for specific governmental functions and that the police jury will exercise control over the committees. “The governing authority of a local ^governmental subdivision shall have general power over any agency heretofore or hereafter created by it, including, without limitation, the power to abolish the agency and require prior approval of any charge or tax levied or bond issued by the agency.” La. Const.1974 art. VI, § 15. Interpreting the term “agency” used in this constitutional provision, this circuit in Brasseaux v. Vermilion Parish Police Jury, 361 So.2d 35 (La.App. 3 Cir.), writ denied, 363 So.2d 535 (La.1978), concluded that it was intended to encompass the *846 same bodies as were enumerated m Article 14, § 46 of the 1921 Constitution, the source provision for the new Article VI, § 15. Those bodies in the source provision were termed “board,” “commission,” “agency,” “district,” “office,” “government,” and “any device whatever having governmental functions, power or authority.” Louisiana Revised Statute 33:1415(A) pertains to a governing authority's control of entities created by it. Specifically, it provides in pertinent part that “[w]here a parochial or municipal governing authority is given the power to appoint members to boards or commissions, whether presently or hereafter created, the governing authority shall also have the power to remove and replace the members or commissioners.”
In two cases courts of appeal have discussed provisions found in La.' Const, art. XIV, § 46(A) of the 1921 Constitution. Giammanco v. Pizzolato, 275 So.2d 880 (La.App. 4 Cir.), writ denied, 279 So.2d 690 (La.1973), dealt with removal of members of a hospital service district appointed by a police jury, and Brasseaux, 361 So.2d 35, involved removal of members of a drainage district appointed by the police jury. Giammanco held that the right to abolish an agency did not include the power to remove individual members. The decision was based in part on La. Const. [1921,9 art. XIV, § 46(A) which was interpreted to provide for appointments only, and not removal, when it stated in pertinent part that “[a]ll appointments to the Board of Commissioners of each such agency, whether presently or hereafter created shall be made by the parochial or municipal governing authority or authorities which created said agency.” Giammanco, 275 So.2d 880. Brasseaux, interpreting La. Const.1974, art. VI, § 15, which replaced Article XIV, § 46 of the 1921 Constitution, was not convinced that the grant of “general power” to a governing authority of a subdivision over any agency heretofore created by it included the unlimited power to remove members of agencies created by the governing authority. Reviewing the official journal of the Constitutional Convention of 1973, the Brasseaux court found that early drafts of this section specifically included the power of removal but did not include the expression “general power.” In juxtaposition, the final language did not contain the power of removal but did contain the language “general power over any agency ... created by it....” The Brasseaux court interpreted the new constitutional provision as being no different from the old one with respect to the power of removal.
In this respect, we disagree with the Brasseaux panel’s interpretation. We believe that “general power” over an agency contemplates the power to remove members of the agency, restricted or limited only when other provisions of law place limitations on the power of removal as to a particular agency.[2] The legislature in 11fl1987 recognized that “general power” is broad power, unrestricted by the interpretation given by Brasseaux. It enacted Act 322 of 1987, which became La.R.S. 33:1415, to specifically grant to governing authorities the power to remove and replace members of an agency created by them.
Section 1415(A) (emphasis supplied) reads as follows:
A. In any case where the governing authority of any parish or municipality *847 shall have created or established, or shall thereafter create or establish, any board, commission, agency, district, office, government, or any unit having governmental functions, power or authority, such governing authority is hereby authorized to abolish same, and where the creation or establishment required the concurrence of two or more governing authorities, the concurrence of all of them shall be necessary to exercise the authority afforded by this Section; provided, that where any indebtedness of any such board, commission, agency, district, office, government, or any entity whatever having governmental functions, is outstanding, the authority herein provided shall not be exercised until provision is made for the assumption of such indebtedness in the manner provided by law. However, no parish or municipal authority shall abolish any entity pursuant to this Subsection if the creation of that entity is required by state law. Where a parochial or municipal governing authority is given the power to appoint members to boards or commissions, whether presently or hereafter created, the governing authority shall also have the power to remove and replace the members or commissioners.
Act 322 of 1987 was introduced by Senate Bill 579. The minutes of the meeting of the Senate Committee on Local and Municipal Affairs on May 28, 1987, when Senate Bill 579 was taken up, contains the following explanation for the need for this legislation:
|n“Mr. Patrick Bergeron, Police Jury Assoc., was present in support of the legislation. He stated there has been confusion over the Louisiana Constitution’s definition of “general power”. This bill further defines this term and tracks the language of the Constitution. There have been instances where the police jury created a body or appointed a member to a board and then could not abolish the body or remove the member.”
“Ms. Elizabeth Byles, Calcasieu Parish Police Jury, testified in support of the legislation. She stated Calcasieu Parish has had several instances in which board members attended only half their meetings per year and yet these members could not be removed. When this occurs, the only recourse the police jury has is to ask the district attorney to ask for the member’s resignation.”
As observed earlier, La.R.S. 83:3005 did not create the Gaming Revenue Distribution Committee. It merely recognized the existence of the committee that had already been created by the Police Jury. Although it could be argued that legislative authority for co-existence of the committee with the duration of the gaming fund is implied, and that this operates as a restraint on the Police Jury’s power to abolish the committee, there is nothing in La.R.S. 33:3005, or anywhere else, that limits the general power of the Police Jury over the committee, including the power to remove and replace members. The legislature recognized that the committee was created by the Police Jury and clearly chose not to place any restrictions on the control the Police Jury had over the committee pursuant to the general power given to it by the constitution and laws we have discussed. We conclude that La.R.S. 33:1415(A) unconditionally empowers the Police Jury to remove and replace members of this committee.
Our colleagues in McIntosh v. Madison Parish Police Jury, 554 So.2d 227 (La.App. 2 Cir.1989), reached the same conclusion with regard to that police | ^jury's general power over the Madison Parish Port Commission, an entity created by the state but whose commissioners were appointed by the police jury. Responding to a contention like that presented by the appellees in the present case, the court in McIntosh, 554 So.2d at 229-30 said:
The complaint of the plaintiffs that to allow the police jury to remove the port commissioners “at will” allows the police *848 jury “to control the actions of the port commission[ers]” should be addressed to the Legislature and not the judiciary. Our function is to construe the statutes and not to supplant the Legislature.
The trial court found that the new five-member committee was disproportional since three of its members were also police jurors, as opposed to only one member being a juror on the original eight-person committee. But this result cannot be disproportional; there are no specific statutory proportions established for representation on the committee-its makeup is under the general power of the police jury. Moreover, when it replaced the members, the Police Jury was authorized to appoint members of its own body. La.R.S. 42:64(A)(1) states in pertinent part that “local governmental subdivisions may appoint members of the governing body to boards and commissions created by them and over which they exercise general powers as provided in Article VI, Section 15 of the Constitution of Louisiana.” This statute specifically recognizes that the Police Jury may appoint its own members to the committee since it created the committee and, as we have already discussed, it unquestionably has general power over the committee.
| is2. Proportions and Distribution of the Fund.
Our decision that the allocation of the funds is the discretionary function of the committee under control of the Police Jury is further supported by the following considerations. Louisiana Revised Statute 33:3005 plainly does not require that all political subdivisions in Avoyelles Parish receive some portion of the funds. The appropriation is to offset and defray the expenses of certain political subdivisions resulting from the conduct of Class III Gaming. La.R.S. 33:3005(B). The distribution is as determined by the committee. La.R.S. 33:3005(C). Prior to and during 1995 the distribution was limited to four political subdivisions and the municipalities in the parish. The legislature recognized that limitation for the year 1995, but left it to the committee for the years beginning October 1, 1996. The committee has continued to limit the distribution to the same four political subdivisions and the municipalities, but has changed the proportions.
There had to be some ultimate mechanism in place to make these discretionary determinations. One juror who testified at the trial, and who was a member of the committee, explained why the Police Jury’s share was increased from 25% to 42%. He said that the Police Jury was being bombarded by other political subdivisions, such as the Ward 2 Court and the District Attorney’s office, for more money. He talked about the Justice of the Peace courts and the constables and their increased traffic. Gaming increase in traffic problems ranged all the way from the condition of the old elevator in the courthouse to the needs of the airport district. This juror stated that the Police Jury needed “a little bit more control, a little bit more |14money to fund those agencies which we are mandated in some cases we are asked and they are directly related to the gaming industry that’s come to the parish.”
An article appearing in 50 La.L. Review 635 (1990) entitled “Not Endowed by the Creator: State Mandated Expenses of Louisiana Parish Governing Bodies,” by I. Jackson Burson, Jr., interestingly explains the extent that parish police juries are mandated to pay certain expenses of district courts, some city courts, district attorneys, justices of the peace, clerks of court, coroners, sheriffs offices, some marshals, tax assessors, and registrars of voters. In addition to those expenses, police juries have the obligation to maintain courthouses, construct and maintain parish roads, and bear myriad other expenses required for the performance of their governing functions. That the Avoyelles Parish Police Jury was designated as the recipient of these funds with the obligation of making the distribution, is not at all un *849 fair-it was eminently practical-considering its mandated responsibilities to virtually all other political subdivisions in the parish.
It is in the light of these considerations that we mention the contention that the distribution plan by the committee was arbitrary and capricious. “In reviewing the decisions of public bodies, the courts will not^interfere with the functions of those bodies in the exercise of the discretion vested in them unless they abuse their power by acting capriciously or arbitrarily.” Baton Rouge Audubon Soc., v. Sandifer, 97-464, p. 7 (La.App. 8 Cir. 10/29/97); 702 So.2d 997, 1000-1001. “ ‘Capriciously’ has been defined as a conclusion with no substantial evidence to support it or a conclusion contrary to substantiated competent evidence.” Id. “The word ‘arbitrary implies a disregard of evidence or of the proper weight thereof.” Id. liSThe testimony of the new members of the committee amply explained that the new distribution plan was within the range of discretion vested in the committee. It is not our function to supplant the properly exercised discretionary will of the parish governing authority.
Appellees argue that the special statute contemplates formal meetings of the committee, notice, the taking of evidence, and an adjudication based on the evidence, as to the impact of gaming on all political subdivisions. The statute does not require these or any other formalities for committee meetings. The statute’s silence as to formalities of committee meetings means that their decisions are simply left to the committee’s discretion. It should be pointed out, however, that the committee in fact gave notice to the appel-lees of the meeting to establish the new percentages, and the appellees chose not to attend the meeting for the stated reason that they did not recognize the validity of the appointments of the new membership.
Finally, we discuss the finding of the trial court that the Police Jury and its arm, the committee, were to serve the various beneficiaries of the gaming money in a fiduciary capacity, and that the police jury violated its fiduciary obligations. To support its finding that the Police Jury and its arm, the committee, were fiduciaries, the trial court cited State v. Hagerty, 251 La. 477, 205 So.2d 369 (La.1967), cert. denied, 391 U.S. 935, 88 S.Ct. 1848, 20 L.Ed.2d 855 (1968), and Amiss v. State of Louisiana, 340 So.2d 1085 (La.App. 1 Cir. 1976). Hagerty held that a succession representative is a fiduciary with respect to the succession. Amiss held that a sheriff in his capacity as an ex-officio tax collector is a fiduciary with respect to money collected for tax recipient bodies. Both 1,6of those cases state the rule that a party who holds funds belonging to another party is a fiduciary of the funds.
In the present case the monies were remitted to the Police Jury. La.R.S. 33:3005(C). The monies were held by the Police Jury until the committee decided which political subdivisions of Avoyelles Parish were to receive the funds. The Police Jury became a fiduciary of the gaming revenues, to the political subdivisions besides itself, only after it was determined what entities were entitled to the money and in what proportions. The function of the committee was only to meet annually prior to October 1 each year to determine the proportion of funds to be distributed to each political subdivision of the parish. La.R.S. 33:3005(E). It was after that determination that the Police Jury became a fiduciary of the money it held for those political subdivisions that the committee decided were entitled to the funds. The appellees, the Law Enforcement District and the District Attorney, had no right to these funds until an allocation was made to them by the committee. Until that allocation was made, they did not stand in the same relationship to the Police Jury that the tax recipient bodies stood to the ex-officio tax collector in Amiss.
We also note that there are political subdivisions in Avoyelles Parish who have yet to be allocated any of this money. The legislature left the decision as to which of the many political subdivisions in Avo-yelles Parish would be entitled to the gam-. *850 mg revenues to the committee. No political subdivision has a right to a fixed share, or any share. Until the committee makes this decision, no one is entitled to the money. Once the committee makes its decision, the Police Jury distributes the funds |17within 10 days of receipt to the political subdivisions of Avoyelles Parish as determined by the committee. La.R.S. 33:3005(C).
In summary, we find that the Police Jury had the power to replace the membership of this committee and to include its own members on the committee. There is no law in this case that limits this power of the Police Jury. The action of the committee was not arbitrary and capricious in apportioning the funds. The Police Jury was not a fiduciary of the money to any political subdivision until the committee decided that a political subdivision was entitled to a share of the gaming revenues.
For the above reasons the judgment of the trial court is reversed. The main demand and the intervention are dismissed. Costs below and here are assessed equally to the Law Enforcement District and the Avoyelles Parish District Attorney.
REVERSED AND RENDERED.

. A law enforcement district is a taxing entity. See La.R.S. 33:9001 et seq. For all practical purposes, the Law Enforcement District of the Parish of Avoyelles is the Sheriff's Department of Avoyelles Parish.

. Brasseaux and Giammanco involved specific statutes which limited and put conditions on the appointing authority's power to remove members of those agencies. La.R.S. 38:1609 provides limitations upon the • police jury’s power to remove commissioners of a drainage district. In Brasseaux it was found that the police jury did not comply with the provisions of this section, and the removed commissioners were ordered reinstated. La.R.S. 46:1053 provides for the appointment by the police jury of members of hospital service district board commissioners, their terms of office, and removal for cause. Finding an identical provision in the special statute creating the St. Tammany Parish Hospital Service Districts, the court in Bagert, 594 So.2d 922, declared that a police jury cannot remove a member of a hospital service district at will.